The cross-petition seeking specific performance of an oral contract to devise or convey land in consideration of services to be performed being fatally defective in the particulars pointed out in the opinion, it was error to refuse to sustain a demurrer thereto.
 No. 12981. OCTOBER 12, 1939. REHEARING DENIED NOVEMBER 17, 1939.
H. C. Brogdon, administrator of F. M. Hogan, deceased, filed his suit against Fred Hogan and his wife, Maude Hogan, seeking recovery of a certain farm described in said petition, together with rents, issues, and profits therefrom for two years. The petition alleged that plaintiff's decedent purchased the property in 1930, went into the immediate possession thereof, and remained in the possession until his death on March 8, 1937; that the defendants lived with the deceased in the same house on the property until his death; and that the defendants were claiming possession thereof, adversely to the plaintiff, without any right thereto under some fictitious claim under the deceased. The defendants filed their *Page 245 
answer and cross-action, in which they prayed for specific performance. They admitted sufficient allegations of the petition to cast the burden on them, and further pleaded as follows:
"7. Defendants F. H. Hogan and Mrs. Maude Hogan show that F. M. Hogan was a bachelor, and very old, and an uncle of F. H. Hogan, and was desirous of having a home for himself and his brother, W. J. Hogan, who was the father of F. H. Hogan. That the said F. M. Hogan was desirous of having his brother W. J. Hogan, also old and crippled, near him, and in December, 1930, the said F. M. Hogan, in order to have a place to stay and some one to take care of him and look after him and his aged brother whom he had wanted near him, agreed with these defendants, his said nephew F. H. Hogan, and wife Mrs. Maude Hogan, that if they would give up where they were living and would go with him to Gordon County, Georgia, on the property described in paragraph three of the original petition, and make a home for him, the said F. M. Hogan, and his brother W. J. Hogan, during their lifetimes, and look after them, cultivate, drain, and improve the property and make it livable and habitable as a home and a farm, that he would buy said property for them. That said place was run down at the time, and F. M. Hogan stated that he could not on account of his old age attempt to build up the place or manage it; and that if these defendants would make the said property livable and build it up and maintain a home for him and his old and crippled brother and keep them there together, he would purchase said property for them.
"8. Defendants show that they with said F. M. Hogan looked over the said property and agreed to the above, and from December, 1930, gave up their individual lives and plans and devoted same to the carrying out of the agreement set out in paragraph seven thereof, and did carry out fully said agreement and made a home for said F. M. Hogan during his lifetime and his said brother W. J. Hogan his lifetime, took care of them when well and when ill; made at their own expense substantial, valuable, and permanent improvements on the land by draining same, terracing same, building a barn and improving the main house and covering a tenanthouse, and looked after and operated the farm; ran the household, made a home and residing place for said F. M. Hogan and his brother W. J. Hogan during their lifetimes. *Page 246 
"9. That in December, 1930, these defendants took possession under said agreement set out in paragraph seven, and fully and completely complied with same and all of the terms and conditions thereof, and expended large sums of money in improving same with valuable, permanent, and substantial improvements as aforesaid.
"10. Defendants show that they immediately went into possession of said described property in December, 1930, under said agreement and have continuously since said time remained in possession thereof and are now in possession. That they have made substantial, valuable, and permanent improvements thereon; expended money, time, and labor in operating the home and looking after F. M. Hogan, who continuously lived with them and ate with them.
"11. That the said defendants, relying upon said contract and agreement, entered into possession of said property, made valuable, substantial, and permanent improvements thereon, gave up their individual lives and devoted their said lives since December, 1930, to the carrying out of the said agreement and contract.
"12. Defendants show that it would be inequitable, after they have complied with all of the terms and conditions of their said agreement and have entered into possession thereunder, devoted their lives to the carrying out of same and have made substantial, valuable, and permanent improvements on said property, for the representative of F. M. Hogan estate not to carry out said contract." Their prayers were: that H. C. Brogdon, administrator of the estate of F. M. Hogan, be required by decree of the court to specifically perform and carry out the contract; that title to the property described in paragraph 3 of the petition be decreed in F. H. Hogan and Mrs. Maude Hogan, and that they have such other and further relief as may seem meet and just and in accordance with law and equity.
The plaintiff demurred on the following grounds:
"1st. That the averments of said answer as a whole fail to set forth any grounds in law or equity on which defendants are entitled to the relief prayed for therein.
"2d. That said answer fails to allege the value of the services rendered by the defendants to the deceased, or of the property the defendants were to receive under the agreement referred to therein, so as to enable the court to determine the adequacy of the consideration therefor or the justness or fairness of said contract. *Page 247 
"3d. That said answer is vague, indefinite, and uncertain in that it is not made clear whether the defendants claim that the lands purchased by the deceased, F. M. Hogan, were impressed with a trust in their favor, or whether the said F. M. Hogan was to deed or will said property to them, and whether the alleged agreement made by him with the defendants was executory or became executed on the purchase of said lands.
"4th. That said agreement is too vague, indefinite, and uncertain to authorize a decree for specific performance thereof as prayed.
"5th. He demurs specially to said answer, on the grounds that it is not alleged that the said F. M. Hogan failed and refused to comply with the agreement alleged to have been made by him, it being definitely alleged that pursuant to said agreement he did purchase the property, and that the defendants, together with the said F. M. Hogan, lived on said property during the lifetime of the said F. M. Hogan and his brother, W. J. Hogan, and it not being alleged that said agreement contained any provision that the said F. M. Hogan would convey title to said property to the defendants at any time, or make any will or devise to them at his death.
"6th. He demurs specially to said answer, in that it is not alleged therein when and where said alleged agreement was made, or under the agreement alleged to have been made, who was to receive the rents, issues, and profits from said property, or who has received the same since the defendants and the said F. M. Hogan moved onto said property.
"7th. He demurs specially to the averments of the ninth and tenth paragraphs of said answer, on the grounds: (a) That the same are conclusions of the pleader, and set forth no issuable facts; (b) that it is not alleged the kind and nature of the possession which the defendants took of said land, in that it is not set forth whether the same was exclusive or joint possession with the said F. M. Hogan; (c) that it is not alleged what the value of the said land was or is; (d) that it is not alleged what the value of the improvements placed on said farm is, or when the same were made; (e) that it is not alleged how or in what way the defendants spent their time in looking after the said F. M. Hogan, or what they did to look after him, or what money they expended in doing so.
"8th. He demurs specially to the averments of the eighth and *Page 248 
eleventh paragraphs of said answer to the effect that the defendants gave up their individual lives and plans since December, 1930, to carrying out of said agreement and contract, on the grounds that same are conclusions of the pleader, and are vague, indefinite, and uncertain, in that it is not alleged what plans they gave up in order to carry out said agreement or contract, or how or in what way their lives since said contract have been different from their lives and plans prior to said time, or what the value of such services as were rendered by them under said alleged agreement was, or how or in what way such change in their lives and plans was or could be a consideration for said agreement, particularly in that it is not alleged that the giving up of their lives or the change of their plans was any sacrifice on their part, financial or otherwise."
The defendants amended their answer, as follows: (1) That in pursuance of the contract and agreement, they entered into exclusive possession of the premises, with the right of F. M. Hogan to live thereon and occupy the same during his lifetime. (2) That under the agreement and contract the legal title was vested in the defendants upon the death of F. M. Hogan. (3) That the defendants fully complied with all of the terms and conditions of the contract and agreement and looked after F. M. Hogan and W. J. Hogan until their deaths, both being dead.
To the answer and cross-action as amended the plaintiff renewed his demurrer, and it was overruled. The jury returned a verdict for the defendants on their cross-action. A motion for new trial on general and special grounds was overruled. The plaintiff assigns error on both rulings just stated.
The foundation of the cross-action is an alleged oral contract made by the deceased and the defendants, with mutual obligations which were met by defendants, but not performed by the plaintiff's intestate. Specific performance is an equitable remedy furnished in certain cases. When one party to an executory contract performs, and the other fails to perform, the one in default is liable in damages to the other, and ordinarily this is the remedy afforded by our law for the redress of the wrong. In certain instances, however, equity will decree specific performance of an oral agreement respecting land. When one agrees with another, *Page 249 
in consideration of a promise by the one to perform certain services to the other, that the latter will convey or devise to him certain real property, and the one fully performing his part of the contract is met by a refusal of the other to execute his part of the agreement, he may have a choice of three courses, to wit, a suit on a quantum merit for the value of the services performed by him, a suit for damages for the violation of the contract, or a suit for specific performance. Banks v.Howard, 117 Ga. 94 (43 S.E. 438), and cit.
We do not mean to say that in every such case the party aggrieved will be granted, at his option, specific performance. It is not a remedy which can be demanded as a matter of absolute right. Shropshire v. Rainey, 150 Ga. 566 (104 S.E. 414);Huggins v. Meriweather, 177 Ga. 461 (170 S.E. 483). In the character of cases such as the one now under discussion, there are several elements of possible infirmity, if any of which be present, it is fatal to the grant of the relief sought. Mere inadequacy of price may justify a court in refusing to decree specific performance of a contract of bargain and sale.Shropshire v. Rainey, and Huggins v. Meriweather, supra. In order to authorize specific performance, the terms of the contract must be clear, distinct, and definite. Shropshire v.Rainey, supra. The petition must allege the value of the services to be rendered, and the value of the property. Huggins
v. Meriweather, supra. These values must be set forth in order to show that the contract which it is sought to enforce is one not unfair, or unjust, or against good conscience; for if it so be, it is fatal to the grant of the relief sought. Potts v.Mathis, 149 Ga. 367 (100 S.E. 110); Shropshire v.Rainey, and Huggins v. Meriweather, supra. The contract must be precise in its terms. Studer v. Seyer, 69 Ga. 125,126. There must be a sufficient specification of the items of service, or else the petition is demurrable. Lansdell v.Lansdell, 144 Ga. 571 (87 S.E. 782). The petition in the instant case did not with precision give the terms of the contract, or its date. The value of the services was not alleged, or that of the property sought to be recovered. The services to be performed were alleged in the most general way, not any more particularly than in Potts v. Mathis, and in Lansdell v.Lansdell, which this court said were insufficiently shown. These defects were pointed out by appropriate demurrers. The mere *Page 250 
fact that the intestate was an uncle of one of the defendants is not enough to bring the case within the exception referred to by Mr. Chief Justice Fish in his opinion in the Potts case, supra. Indeed, in that case the petition alleged that Potts was a nephew of Bass, the person with whom he made the contract. In so far as the petition in the instant case discloses the character of the services contracted for, it called for only such services to him as a stranger might have rendered. The petition did not set forth any agreement to nurse and to give "personal, affectionate, and considerate attention such as could not be readily procured elsewhere."
Applying to the record before us the principle repeatedly announced by this court in its former rulings, the cross-petition seeking specific performance should have been dismissed. What followed the refusal to dismiss was nugatory, and the assignment of error relating to the refusal to grant a new trial need not be considered.
Judgment reversed. All the Justices concur.