26712.   TOMLINSON et al. v. PATRICK et al.

ARGUED SEPTEMBER 14, 1971—DECIDED NOVEMBER 18, 1971.

*D. W. Slone, Knight & Perry, W. D. Knight,* for appel-
lants.

*Jack Knight, Ben T. Willoughby,* for appellees.

HAWES, Justice. 1. The court did not err in overruling appellants' motion to dismiss the complaint.

2. Contracts of the character with which we are here dealing are generally regarded by the courts as being of two kinds. In one kind the complaining party may be shown to have agreed with the decedent to go into the home of the decedent to nurse and to give "personal, affectionate and considerate attention, such as could not readily be procured elsewhere." Such services are regarded as being so personal in character that they are of the kind that can normally only be rendered by a close relative out of love and affection for the one thus ministered to, and are of such character that their value cannot be equated with money. *Potts v. Mathis,* 149 Ga. 367, 370 (100 SE 110); *Brogdon v. Hogan,* 189 Ga. 244, 250 (5 SE2d 657); *Johns v. Nix,* 196 Ga. 417 (3) (26 SE2d 526). Upon proof of this kind of contract, it is unnecessary to show the monetary value of services rendered in performance of the agreement by the plaintiff.

The other kind of contract is one where the agreement is merely to render for the deceased such services as might readily be procured by the deceased by employing another to perform them in exchange for the payment of money. In such case, in order for the plaintiff to recover damages for the breach of an agreement or to have specific performance, it is necessary that the plaintiff prove the value of the services which were actually rendered. If the plaintiff's evidence proved the existence of any agreement to go into the home of the deceased or into the home of the deceased and her husband before her husband's death and render the kind of personal services intended to be embodied in contracts of the first kind above referred to, it failed to show performance of that kind of contract. It is true that the evidence shows that Mrs. Bridges called Mr. and Mrs. Patrick to come from Lakeland to Tampa to assist her with Mr. Bridges and that in response to that call they did go to Tampa and that Mrs. Patrick took Mr. Bridges in charge and slept with him at night to keep him on the bed, the

evidence showing that his mental condition had deteriorated to the point that he was prone to get out of the bed and wander about at night, even to the extent of going out of the house. Mrs. Patrick testified that on the occasion of that first trip to Tampa they stayed there five days and that they subsequently went back to Tampa "many times," sometimes staying two weeks and sometimes eight or nine days, and that the services which she performed for Mr. Bridges during those stays in Tampa were nursing services. The evidence showed that Mrs. Patrick was a licensed practical nurse. Mr. Patrick testified that he went to Tampa on three occasions and that on each occasion he stayed there from three to seven or eight days. If, during his visits to Tampa, he performed any services directly for Mr. Bridges, or for Mrs. Bridges, no evidence was adduced as to such performance. This evidence falls short of showing that Mr. and Mrs. Patrick, or either of them, moved into the home of Mr. and Mrs. Bridges in Tampa such as to bring the case within the first class of contracts above referred to.

It is undisputed that after Mrs. Bridges moved back to Lakeland from Tampa and established a home there, Mr. and Mrs. Patrick did no more than frequently visit her in that home and perform incidental services such as buying groceries and helping with minor housekeeping duties while visiting with her. There is not one line of evidence in the record from which the jury could have found that the plaintiffs performed any particular quantum of services for Mr. and Mrs. Bridges either in Tampa or in Lakeland, or from which they could place any dollar value on such services, even if it can be said that the record shows that these services were rendered pursuant to any contract therefor. It follows that the only possible basis for the jury verdict must relate it to the first class of contracts above referred to. One seeking specific performance of such a contract must show, in addition to the contract, a substantial compliance with his part of the agreement. *Mann v. Moseley*, 208 Ga. 420 (1) (67 SE2d 128); *Rodgers v. Street*, 215 Ga. 643 (112 SE2d 598); and, *Hudson v. Hampton*, 220 Ga.

165 (4) (137 SE2d 644). The evidence in this case did not show performance by the plaintiffs of any agreement to move into the home of Mr. and Mrs. Bridges and to render personal, affectionate and considerate attention to either of them such as would relieve the plaintiffs from the necessity of proving the value of the services which they rendered in order to recover. There was no proof of the value of the services rendered by the plaintiffs to Mr. and Mrs. Bridges, and for these reasons the evidence was insufficient to authorize any recovery.

3. The final ground of enumerated error relates to the overruling of the appellants' motion for a new trial. One of the grounds urged before this court was the introduction in evidence over defendants' objection of the depositions upon written interrogatories of the witnesses, Victor Bonner and Patricia Yon. The transcript shows that appellants objected to this evidence on the trial of the case on the grounds that these depositions constituted hearsay evidence and that the defendants had not been afforded an opportunity to cross examine the witnesses. However, in the brief of appellants before this court the argument with reference to this ground of the motion for a new trial seems to be addressed not to the admissibility of those depositions, but to the admissibility in evidence of the unsigned instrument purporting to be a copy of the will executed by Mrs. Bridges while she was in Tampa, Florida, it being urged before this court that that instrument was not admissible as an executed document because it was not proved that it was executed in conformity with Florida law. It does not appear that this latter point was made in the trial court. If it was, appellants have failed to point out in their brief where in the record or in the transcript such objection was made. It follows that this portion of the final ground of enumerated error presents no question for this court to decide.

The remaining grounds of the motion for a new trial which are urged before this court are either clearly without merit in view of the rulings made in the preceding division of this opinion, or relate to matters not likely to arise upon another trial.

4. For the reasons set forth in Division 2 of this opinion, the evidence did not authorize a verdict for the plaintiffs under Count 1 of the complaint. Count 2 of the complaint sought a monetary judgment for damages in the amount of $25,000 as alternative relief. We are not called upon to decide whether or not a judgment in that amount would have been authorized. It is not apparent, however, that the plaintiffs do not have a claim against the defendants for some amount of money damages for value of services actually rendered. Under the authority contained in *Code Ann.* § 81A-150 (e), the trial court is directed to grant to the defendants a new trial.

*Judgment reversed with direction. All the Justices concur, except Felton, J., who dissents from the grant of the new trial.*

FELTON, Justice, dissenting in part. I dissent from the direction of this court that a new trial be granted in this case. Under the facts and pleadings in this case it is my opinion that this court is not justified in ordering a new trial for the appellees in the interest of justice. The plaintiffs in their complaint "shot" for the whole of the estate above expenses of administration and other preferential debts, rather than the reasonable value of the services performed by the appellees for Mr. and Mrs. Bridges. The services to Mr. Bridges lasted about two months and those to Mrs. Bridges were infinitesimal. The appellees' complaint made the obvious choice of claiming a large part of the estate by contending that under the law they did not have to prove the value of the services rendered for the reason that the law did not require them to *move into* the home of Mrs. Bridges and that merely *going* into her home was sufficient to excuse them from proving the values of the respective services. This court ruled against the appellees on this point in an opinion which indicates that there may be implied in the allegations and proof a right to recover for the reasonable value of the services rendered. I do not believe that the provisions of the Civil Practice Act, *Code Ann.* § 81A-150 (e) (Ga. L. 1966, pp. 609, 656, as amended) in-

tended to give this court the discretion to order a new trial to meet the ends of justice in this case. Justice lies in the grant of a judgment n.o.v. because the appellees made an election of remedies and guessed wrong. The grant of a new trial to them gives them the right to proceed on quantum meruit on a theory which is not pleaded by a second count in the complaint—which I say has been abandoned by the appellees. Under the direction of this court they "keep their pie and eat it too." I think that, under the circumstances, this court should have directed that a judgment n.o.v. should be entered up in accordance with the appellant's motion.