### A99A0573. CAMP et al. v. EMSA LTD. et al.
(518 SE2d 482)

BLACKBURN, Presiding Judge.

In this medical malpractice action, Thomas Camp, the surviving husband of Alice Camp, and Charles Camp, the administrator of the estate of Alice Camp (the Camps) appeal the trial court's denial of their motion for a directed verdict and their motion for a new trial, following a jury verdict in favor of EMSA Ltd. and Emergency Medi-

cal Service Associates (defendants). The verdict was supported by the evidence, and we affirm.

The Camps contend that the trial court erred in failing to direct a verdict for plaintiffs and in failing to grant their motion for new trial based on the verdict being strongly against the weight of the evidence. In reviewing a trial court's denial of a motion for directed verdict, this Court must view the evidence favorably to the prevailing party and determine whether there was any evidence at trial to support the verdict. *Tate v. Holloway*, 231 Ga. App. 831, 832 (499 SE2d 72) (1998).

Viewed in this light, the evidence shows that 79-year-old Alice Camp was admitted to the emergency room at Doctor's Memorial Hospital in Augusta on the evening of July 23, 1994. Camp complained of mid-sternal chest pain that radiated to her shoulders and neck, a severe headache, vomiting, diarrhea, and sweating. She advised the emergency room nurse that the symptoms began when she sneezed while working in the garden earlier that day.

Concerned that Camp might be suffering a heart attack, Dr. Ramirez, an emergency room physician, ordered various tests which ruled out this diagnosis. Dr. Ramirez also performed a neurological examination which did not reveal neck rigidity, loss of function of Camp's extremities, or a worsening headache, symptoms which could indicate a neurological problem. Thereafter, Dr. Ramirez ordered x-rays of Camp's sinuses and treated her for sinusitis. Camp asked to go home, and she was dismissed from the hospital. Early the next morning, Camp died from a cerebral hemorrhage.

At trial, the Camps argued that Dr. Ramirez failed to evaluate Camp for a cerebral aneurysm and that the undiagnosed aneurysm ultimately caused her death. Dr. Peter Collis, an expert witness for the Camps, opined that Dr. Ramirez breached the standard of care for emergency room physicians by failing to discover and diagnose Camp with an aneurysm. In addition, Dr. Brian Frist, who performed the autopsy on Camp, testified that, while he could not find any remnant of an aneurysm, he believed that Camp died from a ruptured cerebral aneurysm.

Expert witnesses for the defendants, however, contradicted the Camps' witnesses. Dr. Alfred Gervin opined that Dr. Ramirez's treatment of Camp complied with the applicable standard of care for emergency room physicians. Dr. Stephen Vogel testified that Camp's autopsy was inconclusive as to whether she had a cerebral aneurysm, and further opined that it was likely that she did not. Likewise, Dr. Wayne Beveridge was of the opinion that Ms. Camp did not die from an aneurysm.

Thus, while the Camps offered expert testimony that the treatment did not comply with the applicable standard of care, the defend-

ants offered expert testimony which showed that the treatment did comply. "It is for the jury to determine whether the facts upon which the expert bases his opinion do exist and, if so, whether the expert's opinion that those facts constituted medical malpractice should be accepted." (Punctuation omitted.) *Kapsch v. Stowers*, 209 Ga. App. 767, 769 (1) (434 SE2d 539) (1993). Here, the evidence at trial was in conflict as to whether Camp had an aneurysm and whether Dr. Ramirez's treatment complied with the applicable standard of care. The jury returned a verdict for the defendants, answering only the first question on the verdict form: "On the Claims of [the Camps against the defendants] do you find: (1) The medical care rendered by defendants' employee (Dr. Ramirez) failed to meet the appropriate standard of care? NO."

It is the function of the jury to resolve conflict in testimony; this Court will not substitute its judgment for that of the jury and will neither weigh evidence nor determine witness credibility. *Stubbs v. Harmon*, 226 Ga. App. 631, 632 (1) (487 SE2d 91) (1997).

(Citations and punctuation omitted.) *Harris v. Leader*, 231 Ga. App. 709, 713 (2) (499 SE2d 374) (1998). As to the Camps' complaint that the verdict for the defendant was against the weight of the evidence, " '[only] the trial court is vested with the authority to grant a new trial on a matter relating to the weight of the evidence.' " *College Park Cabs v. Justus*, 227 Ga. App. 66, 70 (5) (488 SE2d 88) (1997). Although there was conflicting evidence, there was evidence to support the verdict, and the trial court did not err in denying the Camps' motion for a directed verdict or the motion for new trial based on the verdict being strongly against the weight of the evidence.

*Judgment affirmed. Barnes, J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED MAY 26, 1999 —
RECONSIDERATION DENIED JUNE 9, 1999 — CERT. APPLIED FOR.

*Chad A. McGowan*, for appellants.

*Fulcher, Hagler, Reed, Hanks & Harper, David H. Hanks*, for appellees.