A02A0301. FORD v. WHITE et al.

(564 SE2d 841)

BLACKBURN, Chief Judge.

Chester Allen Ford brought an action seeking specific performance of a verbal agreement by the terms of which his great uncle promised to leave him his entire estate in return for Ford's rendering certain services for the rest of his great uncle's life. At the conclusion

---

[3] See *Bruce v. State,* 175 Ga. App. 453, 455 (5) (333 SE2d 394) (1985).
[4] *Clark v. State,* 186 Ga. App. 106, 107-108 (2) (366 SE2d 361) (1988).

of Ford's case, the trial judge granted appellee Jay White's motion for directed verdict. Ford appeals, and we affirm.

Chester Ford testified at trial that in March 1997, Clay Ford, his great uncle, told him that he was going to need somebody to look after him and take care of him; he asked Chester if he could do that. Chester, though reluctant to make a commitment because of his own family obligations, agreed to do what he could. Chester Ford and Clay Ford then entered into an oral agreement under which Clay would leave Chester his entire estate if Chester would care for him for the rest of his life. Specifically, as Chester alleged in his complaint, the terms of the oral contract required Chester to: contribute to the physical care of Clay Ford; contribute to the maintenance of Clay Ford's property; and perform errands for Clay Ford. In return for these services, Clay Ford "was to leave, at the time of his demise, all of his property both real and personal to" Chester Ford.

In March 1998, Clay Ford executed a last will and testament in which, besides several small bequests, he divided his property between appellees Jay White, Clay's nephew, and his wife; Joyce White Shook and Jane White Taylor, Jay White's daughters; and Howard Cunningham, also a nephew. Chester Ford was left nothing under the will. Chester did not challenge the will in the probate proceedings but subsequently filed suit against the appellees seeking specific performance of his oral contract with Clay Ford.

At trial, Chester Ford testified that he: visited Clay every weekday evening; spent Friday nights with Clay, fixing breakfast on Saturday mornings and staying until early noon; and returned in the late afternoon on Saturdays and spent Saturday night with Clay, again making breakfast on Sunday mornings. Chester also testified that he: cleaned and cooked for Clay; helped him with his personal hygiene; administered, on occasion, Clay's medications; mowed his lawn; maintained Clay's car; took Clay wherever he asked to be taken in the car, including trips for haircuts, grocery shopping, and banking; and was available whenever Clay needed him. Chester also testified that after he and his relatives had Clay admitted to a nursing home, he continued to visit Clay on the same evening and weekend schedule, sometimes helping to feed Clay but not staying overnight, for the six months before Clay died.

At the conclusion of Chester's case, White moved for a directed verdict on various grounds. The trial court granted White's motion, finding that it could not determine from the evidence presented whether the contract was fair because Chester had failed to prove the value of his services and the value of Clay's estate.

1. In his first enumeration of error, Chester Ford maintains that the trial court erred in granting White's motion for directed verdict.

A directed verdict is proper only if there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a verdict. OCGA § 9-11-50 (a). In determining whether any conflict in the evidence exists, the court must construe the evidence most favorably to the party opposing the motion for directed verdict. The standard used to review the grant or denial of a directed verdict is the any evidence test.

*Driggers v. Campbell.*[1] In order to determine whether the trial court erred in granting White a directed verdict, we must first ascertain what Chester Ford had to prove in order to secure specific performance of the oral contract into which he entered with his great uncle.

An oral contract by the terms of which a person agrees for a valuable consideration to make a will giving property to the other contracting party may be enforced by specific performance in Georgia. *Logan v. Logan.*[2] "The law, however, very properly has laid down some very strict rules governing the enforcement of any contract by specific performance." (Punctuation omitted.) Id. "In order to authorize specific performance, the terms of the contract must be clear, distinct, and definite." *Brogdon v. Hogan.*[3]

Moreover, since specific performance is an altogether equitable remedy, and not one which can be demanded, merely by virtue of a proven agreement, as a matter of absolute right, it must be made to further appear that the contract is equitable and just, and a court will be justified in refusing a decree of performance should inadequacy of price appear, or any other fact showing the contract to be unfair, or unjust, or against good conscience. Thus, if the alleged contract sued on be based on an oral agreement to convey or devise land in consideration of the performance of ordinary personal services, the petition must not only show that the contract is precise in its terms, but must also allege the value of such services and the value of the land or specific data from which such relative values can be determined.

(Citations omitted.) *Bullard v. Bullard.*[4]

---

[1] *Driggers v. Campbell*, 247 Ga. App. 300, 302-303 (2) (543 SE2d 787) (2000).
[2] *Logan v. Logan*, 223 Ga. 574, 576 (2) (156 SE2d 913) (1967).
[3] *Brogdon v. Hogan*, 189 Ga. 244, 249 (5 SE2d 657) (1939).
[4] *Bullard v. Bullard*, 202 Ga. 769 (1) (44 SE2d 770) (1947).

> Exceptions to the general rule as to the necessity for averments as to the value of services may exist in cases involving virtual adoption or contracts between near relatives, where one goes into the home of the other agreeing to nurse and give the other personal, affectionate, and considerate attention, such as could not be readily procured elsewhere, and where the value of such services could not be readily computed in money.

(Punctuation omitted.) *Treadwell v. Treadwell.*[5] In sum, unless the oral contract which Chester Ford sought to have enforced through specific performance was one requiring him to give such personal, affectionate, and considerate attention as could not be procured elsewhere, and the value of such services could not be readily computed in money, he was required to allege and prove the value of Clay Ford's estate and the value of the services which he rendered to Clay Ford. *Hudson v. Hampton.*[6]

The trial judge held that the oral contract which Chester Ford sought to have enforced through specific performance was not one requiring him to give such personal, affectionate, and considerate attention as could not be procured elsewhere. The trial judge explained:

> This is not a case where someone moved into the home. This is not a case where someone agreed to be a companion. There's no evidence that that was a condition that personal, affectionate, and considerate attention may be implied, but he didn't go into the home, and what he agreed to do is capable of being procured elsewhere. You can hire people to mow the lawns. That's capable of proof. You can hire people to come by daily and check on you. That's capable of proof. You can hire people to come in on the weekend and look after you, and that's capable of proof as to value. So, the value of those things is capable of proof.

We are in agreement with this reasoning and hold that the trial judge did not err in finding that the contract was not an "agreement to nurse and to give 'personal, affectionate, and considerate attention such as could not be readily procured elsewhere.'" *Brogdon v. Hogan,* supra at 250.

In *Brogdon v. Hogan,* a contract between the plaintiff and his uncle required the plaintiff and his wife, in return for real property,

---

[5] *Treadwell v. Treadwell,* 216 Ga. 156, 160 (115 SE2d 535) (1960).

[6] *Hudson v. Hampton,* 220 Ga. 165, 166 (137 SE2d 644) (1964).

to "give up where they were living," move to another county, and there make a home for, and look after, the plaintiff's uncle and father, "during their lifetimes"; it also required the plaintiff and his wife to "cultivate, drain, and improve the property and make it livable and habitable as a home and a farm." After his uncle's death, the plaintiff sought specific performance of the agreement to convey the land. The Supreme Court of Georgia denied relief, holding that the contract "called for only such services to [the uncle] as a stranger might have rendered," and "did not set forth any agreement to nurse and to give 'personal, affectionate, and considerate attention such as could not be readily procured elsewhere.'" In the same way, the duties Chester Ford was required to perform under the contract, i.e., contributing to the physical care of Clay Ford, maintaining his property, and performing errands, did not require "personal, affectionate, and considerate attention"; these services are merely such "as a stranger might have rendered," and would not be difficult to procure elsewhere. Id. See also *Treadwell*, supra at 161; *Lester v. Copeland*.[7]

Since the contract did not come within the exception, it was necessary that Chester Ford prove the value of the services which he actually rendered to Clay Ford. *Tomlinson v. Patrick*.[8] The trial court found, however, that Chester had failed to prove either the value of his services or the value of Clay's estate and that it thus had "no way to test and measure whether or not it was a fair contract based on the evidence that the plaintiff propounded." As a result, the trial court properly directed a verdict in White's favor.

2. Ford complains that the judgment unfairly deprived him of the opportunity to address or remedy an alleged pleading defect. Specifically, Ford argues that "the Defendants, or possibly the court itself, had an obligation prior to trial to raise the point that, under Georgia law, . . . where specific performance of contract is sought, there must be an averment of the values of services provided to the decedent and of the estate or property promised by the decedent in return for the services." This argument is without merit. White did raise, in a motion for summary judgment, this very issue. The trial court denied the motion, obviously finding that there was an issue of fact as to whether the services rendered by Ford required such proof or fell within the exception. That the trial court determined, after Ford presented his case, that such proof was necessary did not place an obligation upon either White or the trial court to assist Ford in prosecuting his action.

*Judgment affirmed. Johnson, P. J., and Miller, J., concur.*

---

[7] *Lester v. Copeland*, 219 Ga. 195 (132 SE2d 190) (1963).
[8] *Tomlinson v. Patrick*, 228 Ga. 373, 374 (185 SE2d 407) (1971).

DECIDED MAY 3, 2002.

*James N. Butterworth*, for appellant.
*David E. Ralston*, for appellees.