## A07A0141. HIBBARD v. McMILLAN.
(645 SE2d 356)

MIKELL, Judge.

In this appeal, we affirm a judgment granting specific performance, and awarding damages, prejudgment interest, and attorney fees. The relevant facts follow.

Plaintiff Kenneth A. McMillan and defendant Laurance Hibbard, formerly shareholders in a dental practice called Bentley, McMillan & Hibbard, P.C. ("BMH"), terminated their business relationship pursuant to an Agreement entered into on April 14, 2005. The Agreement recites that McMillan sold all of his stock in BMH to Hibbard in exchange for a promissory note; that Hibbard defaulted on the note; that McMillan obtained a default judgment against him for $52,972.74; that the judgment remains unpaid; and that the parties executed the Agreement in order to relieve Hibbard of any future obligations with respect to the judgment and a consulting contract on which he had also defaulted.

The Agreement contains 17 provisions, most of which obligate Hibbard to make various payments to McMillan and to assume responsibility for all of BMH's debts. The provision which is the subject of the present litigation, Paragraph 14, pertains to life insurance. It states:

---

[12] (Citation and punctuation omitted.) Id.; see also *DeRossett*, supra, 275 Ga. App. at 731-732 (4).

Hibbard agrees to select by May 5, 2005, one of the following:

a. McMillan agrees to transfer to Hibbard the life insurance policy owned by BMH on the life of Bentley. Hibbard shall be the owner of this policy and shall be responsible for the payment of all premiums on the policy. It is believed that this policy has an outstanding loan against it in the amount of approximately $70,000. If any additional loans are outstanding against the policy, Hibbard agrees to allow McMillan to place a lien against the policy such that when the policy pays the proceeds to Hibbard, the amount of the additional loan shall be deducted first and paid to McMillan; or

b. Hibbard will allow the cash value of the policy on Bentley to retire the loans against the policy and Hibbard will receive any benefits remaining from the policy or will pay any detriments that result from the surrender.

The Agreement also requires Hibbard to give McMillan a voided check to facilitate automatic deductions for the policy premiums.

When Hibbard failed to make the selection required by Paragraph 14, McMillan filed an action against him seeking specific performance and damages. The complaint asserts that the transfer of the policy will require payment of at least $10,000 in taxes; that Hibbard refuses to make the selection due in part to the tax consequences; and that the court should order him to perform the Agreement. The complaint also recites that McMillan has paid the premiums on the policy in the amount of $685.50 per month and requests that Hibbard be ordered to reimburse him for those payments. Finally, the complaint contains a demand for expenses of litigation pursuant to OCGA § 13-6-11.

Hibbard failed to file a timely answer and the action went into default. Trial was held on the issues of specific performance, damages, and attorney fees. McMillan testified that BMH owns the insurance policy on Bentley's life; that the Agreement required Hibbard to make a selection as to the future ownership of the policy, which Hibbard failed to do; that the monthly premium is $685.50; and that McMillan has been paying the premium on BMH's behalf by depositing his personal funds into BMH's checking account. McMillan explained that the monthly payment has been an "automatic draw" for 25 years, when he and his first partner took out policies to cover each other, and that the policy would have defaulted if he did not fund the BMH account to cover the automatic deductions. In closing argument, McMillan's counsel explained Hibbard's options under Paragraph 14; namely, that the first option gives Hibbard the right to maintain the policy, while the second option allows the policy's cash

value to retire the loans against it and requires Hibbard to accept responsibility for any benefit or detriment remaining thereafter.

Hibbard, who was called for the purpose of cross-examination, admitted that he signed a request for change of beneficiary form as well as a request for systematic payment form. The signature on the latter form was dated April 13, 2005. Hibbard's voided check on his personal account was also introduced into evidence. Following the close of the evidence, McMillan's counsel made a statement in his place concerning attorney fees.

The court ruled from the bench that Hibbard would be ordered to comply with Paragraph 14 and that judgment would issue in the amount of $8,226 plus $304.20 in interest as reimbursement of premiums paid, as well as $2,292.57 in attorney fees. In its order, the court found that Hibbard was in default as to all well-pled facts in the complaint; that he was required to perform the Agreement; that he had been stubbornly litigious; and that McMillan had been required to make premium payments to maintain the policy in furtherance of the Agreement. Hibbard appeals this judgment, enumerating five errors.

1. "A contract upon which specific performance is sought must be certain, definite, and clear; and so precise in its terms that neither party can reasonably misunderstand it."[1] "The requirement of certainty extends not only to the subject matter and purpose of the contract, but also to the parties, consideration, and even the time and place of performance, where these are essential."[2] In his first enumeration of error, Hibbard contends that the trial court erred in awarding specific performance because the language contained in Paragraph 14 is neither clear nor precise. We disagree.

> It is not necessary that a contract shall state definitely and specifically all facts in detail to which the parties may be agreeing, but as to such matters, it will be sufficiently definite and certain if it contains matter which will enable the courts, under proper rules of construction, to ascertain the terms and conditions on which the parties intended to bind themselves.[3]

To determine the parties' intent, "all the contract terms must be considered together in arriving at the construction of any part, and a

---

[1] (Citations and punctuation omitted.) *Firstline Corp. v. Valdosta-Lowndes County Indus. Auth.*, 236 Ga. App. 432, 434 (2) (511 SE2d 538) (1999).

[2] *Williams v. Manchester Bldg. Supply Co.*, 213 Ga. 99, 101 (1) (97 SE2d 129) (1957).

[3] (Citations and punctuation omitted.) *Davidson Mineral Properties v. Baird*, 260 Ga. 75, 79 (7) (390 SE2d 33) (1990).

construction upholding the contract in whole and every part is preferred."[4] In the case at bar, the terms of the contract, including Paragraph 14, were admitted by default.[5] Paragraph 14 must be considered in context of the whole contract, which contains a statement of the purpose, consideration, parties, and time and place of performance of each provision. Moreover, the terms of Paragraph 14 are sufficiently clear so that neither party could reasonably misunderstand them. As explained by counsel during closing argument, the first option gives Hibbard the right to own and maintain the policy, and it provides a mechanism for handling any outstanding loans against the policy. The second option allows the policy's cash value to retire the loans against it and requires Hibbard to accept responsibility for any benefit or detriment remaining thereafter. These terms are clear and precise, and the trial court did not err in awarding specific performance.

2. Hibbard next contends that the trial court erred in awarding damages and prejudgment interest because McMillan's recovery of insurance premiums was barred by the voluntary payment doctrine. We disagree.

Under the voluntary payment doctrine embodied in OCGA § 13-1-13, "[p]ayments of claims made through ignorance of the law or where all the facts are known . . . are deemed voluntary and cannot be recovered unless made under an urgent and immediate necessity therefor . . . or to prevent an immediate seizure of person or property." The doctrine generally bars the recovery of *excess* payments,[6] not payments made to a third party who is not involved in the litigation.[7] In the case at bar, McMillan funded the BMH account in order to pay the company which issued the life insurance policy. The payments were not made to Hibbard to satisfy a claim. Rather, as the trial court stated, nonpayment of the premium by either party would have

---

[4] (Citations omitted.) *Municipal Elec. Auth. of Ga. v. Gold-Arrow Farms*, 276 Ga. App. 862, 866 (1) (625 SE2d 57) (2005).

[5] See *Crawford v. Dammann*, 277 Ga. App. 442, 453 (4) (c) (626 SE2d 632) (2006) (failure to file an answer constitutes an admission of the well-pled factual allegations of the complaint, although it does not admit conclusions of law).

[6] See, e.g., *Gulf Life Ins. Co. v. Folsom*, 256 Ga. 400, 406 (349 SE2d 368) (1986) (whether excess payment of cash value of life insurance policies could be refunded held subject to weighing of the equities by the trier of fact); *Liberty Nat. Life Ins. Co. v. Radiotherapy of Ga.*, 252 Ga. App. 543, 547 (1) (557 SE2d 59) (2001) (insurer could not recover payments allegedly made in excess of that allowed by Medicare); *Yeazel v. Burger King Corp.*, 241 Ga. App. 90, 97-99 (3) (526 SE2d 112) (1999) (voluntary payment doctrine barred tenant from recovering any alleged rent overpayments made during pendency of lawsuit); *Ins. Co. of North America v. Kyla, Inc.*, 193 Ga. App. 555, 556 (388 SE2d 530) (1989) ($100,000 excess of settlement payment over alleged policy limit was voluntary payment which insurer could not recover).

[7] See *Read v. Benedict*, 200 Ga. App. 4, 9 (4) (406 SE2d 488) (1991) (OCGA § 13-1-13 "does not apply to a three-cornered transaction culminating in a *tort* claim for *damages*") (citation omitted; emphasis in original).

defeated the purpose of the entire Agreement. Clearly, the parties intended for the policy to stay in effect to satisfy certain obligations arising under the Agreement. As such, the award of damages is not barred by the voluntary payment doctrine.[8]

3. In his third enumerated error, Hibbard argues that the trial court erred in awarding attorney fees under OCGA § 13-6-11 upon a finding that he was stubbornly litigious.

> In order to recover attorney fees as expenses of litigation pursuant to OCGA § 13-6-11, the plaintiff must show that the defendant acted in bad faith, was stubbornly litigious, or caused the plaintiff unnecessary trouble and expense. We will affirm an award of attorney fees under OCGA § 13-6-11 if there is any evidence to support it.[9]

In the case at bar, there is evidence to support the trial court's finding that Hibbard was stubbornly litigious. McMillan testified that when he and Hibbard met with McMillan's attorney to sign the Agreement, Hibbard requested that he be given 30 days to comply with Paragraph 14 in order to determine which option would be better for him. McMillan further testified that the parties discussed that there would be tax consequences, although the amount was not known. The Agreement was executed on April 14, 2005. Thereafter, as Hibbard admitted by failing to file an answer to the complaint,[10] he repeatedly refused McMillan's demands to comply with Paragraph 14 of the Agreement. There was no bona fide controversy, as there was no evidence that Hibbard misunderstood Paragraph 14. Instead, he forced McMillan to resort to litigation to enforce this provision. Thus, there is some evidence that Hibbard was stubbornly litigious, and the trial court's ruling must be affirmed.[11]

4. Enumerations of error four and five challenge the trial court's refusal to permit Hibbard to pursue two lines of questioning during his cross-examination of McMillan. The trial court first sustained McMillan's objection when Hibbard sought to determine the source of the $70,000 loan against the policy. The court ruled that this line of questioning was irrelevant because the loan was specified in the Agreement, which was attached to the complaint, and Hibbard had

---

[8] Id.

[9] (Punctuation and footnotes omitted.) *Monterrey Mexican Restaurant of Wise v. Leon*, 282 Ga. App. 439, 450 (6) (638 SE2d 879) (2006).

[10] See *Crawford*, supra; see also *Fresh Floors, Inc. v. Forrest Cambridge Apts.*, 257 Ga. App. 270, 272 (570 SE2d 590) (2002).

[11] See *Boone v. Atlanta Independent School System*, 275 Ga. App. 131, 136-137 (4) (619 SE2d 708) (2005).

admitted the existence of the loan by defaulting to the action. The trial court next sustained McMillan's objection to Hibbard's question about the reason for including Paragraph 14 in the Agreement. Hibbard had already asked McMillan, "the reason for this insurance provision and the transfer of the policy is all about taxes, wasn't it really?" McMillan replied that it was not. Hibbard then asked him, "What is it about then? . . . What was the purpose of putting it in there, sir?" McMillan objected that the purpose for including one provision in an entire contract was irrelevant. The trial court agreed and sustained the objection.

> [Hibbard], of course, had the right to a thorough and sifting cross-examination of any witness called against [him]. OCGA § 24-9-64. However, the extent of cross-examination can be curtailed if the inquiry is not relevant or material, and such restriction lies within the discretion of the trial court which will not be disturbed on appeal unless manifestly abused.[12]

We find no abuse of discretion in the case at bar. Hibbard contends that the prohibited lines of questioning were relevant because McMillan was required to prove that Paragraph 14 was equitable and just. The lone case he cites in support of this proposition, *Ford v. White*,[13] is inapplicable, however, as it involves wholly different subject matter; namely, "[a]n oral contract by the terms of which a person agrees for a valuable consideration to make a will giving property to the other contracting party."[14] The enforceability of such an alleged agreement is, by its very nature, dependent upon the equity and fairness of the situation, including the value of the services provided in consideration for the contract.[15]

Although here, McMillan sought the same remedy, specific performance, the subject matter was vastly different. McMillan sought to enforce a single provision in a written contract reflecting an arms-length transaction terminating a business relationship. Unlike the alleged oral agreement in *Ford*, Hibbard admitted by default the consideration upon which the entire Agreement was based, as well as its purpose. Therefore, it was not incumbent upon McMillan to prove the "fairness" of Paragraph 14.

---

[12] (Citation and punctuation omitted.) *Opatut v. Guest Pond Club*, 188 Ga. App. 478, 480 (3) (373 SE2d 372) (1988).

[13] 255 Ga. App. 250 (564 SE2d 841) (2002).

[14] (Footnote omitted.) Id. at 252 (1).

[15] See id.

In general, parties should be entitled to contract on their own terms without the courts saving one side or another from the effects of a bad bargain; they should be permitted to enter into contracts that may actually be unreasonable or which may lead to hardship. Competent parties are free to choose, insert, and agree to whatever provisions they desire in a contract, unless prohibited by statute or public policy.[16]

Based on the foregoing principle, the trial court did not abuse its discretion in ruling that any questions concerning the purpose of Paragraph 14 and of the loans against the insurance policy were irrelevant.

*Judgment affirmed. Johnson, P. J., and Phipps, J., concur.*

DECIDED APRIL 3, 2007.

*Robert H. McDonnell*, for appellant.
*Robert W. Hughes, Jr.*, for appellee.

---

[16] (Citations and punctuation omitted.) *Auldridge v. Rivers*, 263 Ga. App. 396, 398 (587 SE2d 870) (2003).