## A09A1033. CLEMENTS v. WEAVER.
(687 SE2d 602)

BERNES, Judge.

This case arises out of a dispute over whether the decedent, Vivian Weaver Waits, entered into an oral contract to make a will leaving her son, Edward Gerald Weaver, the family farm. Following the decedent's death in 2004, Jolene Clements, the executrix of the decedent's estate, sued Weaver in order to obtain a declaration that there was no valid contract between the decedent and Weaver that took precedence over the terms of the will. Weaver counterclaimed and prayed for specific performance of the contract. Following a jury verdict in Weaver's favor, the trial court entered a judgment vesting fee simple title to the family farm in Weaver. Clements now appeals, arguing that there was insufficient evidence to support enforcement of the oral contract to make a will, and that the trial court erred in denying her motion in limine seeking to exclude parol testimony that allegedly varied the terms of a quitclaim deed executed in 1983. For the reasons discussed below, we find no reversible error.

Following a jury trial, we view the evidence in the light most favorable to the verdict. *Dept. of Transp. v. Hardin-Sunbelt*, 266 Ga. App. 139, 140 (596 SE2d 397) (2004). So viewed, the evidence showed that the Weaver family lived on a farm of approximately 160 acres located in Gordon County. The property included a farmhouse, a barn, and other outbuildings.

In the early 1970s, Weaver's father was in declining health and was struggling financially to continue operating the family farm. In 1972, Weaver's father borrowed $37,000 from the Federal Land Bank to refinance the existing debt and to construct a chicken house on the property. Weaver took charge of running the chicken house in addition to all of the other farming operations, and in 1973, he began making all of the payments on the Federal Land Bank loan.

Weaver's father died in 1979. At trial, Weaver's position was that by the time of his father's death, his mother, who owned the farm property, had already agreed to devise the entire farm to Weaver in her will, if he stayed on the farm and paid off the loan. The trial court, however, granted a motion in limine based upon the Dead Man's Statute preventing Weaver from testifying directly about any conversations he had with his father and his mother about the farm property before 1979.[1] Nevertheless, Weaver was able to testify obliquely on the issue by testifying that after his father's death, his agreement with his mother was "still the same. . . . That I finish

---

[1] See OCGA § 24-9-1 (b); Ga. Code of 1933, § 38-1603 (1); *Wilson v. Nichols*, 253 Ga. 84, 85 (1) (316 SE2d 752) (1984). The merits of this ruling are not before us.

paying, that I pay for the land, stay there and pay for the land, that it would be left to me in the will.''

At the time of his father's death, one acre of the farm had already been deeded to Weaver by his mother. Weaver thereafter remained on the farm and continued to work the farm and the chicken house. He also continued making payments on the Federal Land Bank loan.

In 1983, Weaver's mother requested that Weaver and his siblings execute a quitclaim deed to the farm property in her favor. Consequently, Weaver and his siblings executed and delivered to their mother a quitclaim deed for the stated consideration of one dollar in which they agreed to release any right, title, interest, claim or demand which they had or may have had in the farm property.

Weaver's mother remarried in 1984. At a family meeting held that year to discuss how the marriage would affect her children's inheritance, Weaver's mother told her other children, ''[i]f ya'll want any more land, ya'll have got to deal with [Weaver].'' Weaver continued to live and work on the farm and to make payments on the Federal Land Bank loan after the 1984 meeting.

In late 1984, Weaver's mother conveyed to Weaver five acres of land that included the farmhouse, where Weaver already was living. Shortly thereafter, in the early part of 1985, Weaver's mother conveyed to Weaver an additional 27.7 acres of land that included the chicken house, barn, and other outbuildings.

In 1993, Weaver's mother refused to convey additional portions of the farm to a daughter because ''it was [Weaver's].'' The mother also told Weaver in 1993 that ''every square inch of that land would be left to [him] in the will, and if [he] didn't believe her, [he] could come look at the will.'' That same year, Weaver paid off the Federal Land Bank loan in full.

Weaver's mother died in 2004. In her will, the mother devised the approximately 133 acres of remaining farm property to Weaver's siblings and not to him. The mother explained in her will that she was not devising any of the 133 acres to Weaver because she had already conveyed to him during her lifetime the acres of farmland that included the farmhouse, chicken house, barn, and other outbuildings.

After hearing all of the evidence, the jury returned a verdict in favor of Weaver on his claim to the 133 acres of remaining farm property. The trial court subsequently entered final judgment ordering specific performance of the oral contract to make a will such that fee simple ownership of the property was vested in Weaver. This appeal followed.

1. Clements contends (a) that the evidence was insufficient to establish the terms and existence of the oral contract to make a will

between Weaver and his mother beyond a reasonable doubt, and (b) that Weaver's counterclaim for specific performance was fatally defective due to the lack of evidence of the value of the farm at the time the contract was made. We disagree.

(a) *Terms and Existence of the Contract.* In order to specifically enforce a parol contract to make a will, the contract "must be proved beyond a reasonable doubt." *Salmon v. McCrary*, 197 Ga. 281, 285 (29 SE2d 58) (1944). Further, "[a] parol contract for land, like the reformation of a deed by parol proof, should be made out so clearly, strongly and satisfactorily, as to leave no reasonable doubt as to the agreement." (Citation and punctuation omitted.) *Harp v. Bacon*, 222 Ga. 478, 483 (2) (150 SE2d 655) (1966). However, "the 'reasonable doubt' criterion, if the burden is to be couched in these words, refers not to the standard used by this court but to the jury's finding of the existence of the contract." *Peters v. Joyce*, 156 Ga. App. 183, 184 (1) (275 SE2d 343) (1980). "The appellate courts can only set a verdict aside, on evidentiary grounds, as being contrary to law in that it lacks any evidence by which it could be supported." (Citation and punctuation omitted.) *Cook v. Huff*, 274 Ga. 186 (1) (552 SE2d 83) (2001). Mindful of this standard of appellate review, we conclude that the evidence set forth above was sufficient for the jury to find beyond a reasonable doubt that Weaver's mother agreed to devise the entire family farm to Weaver if he stayed on the land and paid off the loan. It was for the jury, not this Court, to resolve conflicts in the evidence and assess witness credibility. See *Camp v. EMSA Ltd.*, 238 Ga. App. 482, 484 (518 SE2d 482) (1999).

Clements, however, argues that the 1983 quitclaim deed extinguished any right or interest Weaver may have had in the farm up to that point, including any contractual right to ownership of the farm upon his mother's death. We agree, as discussed infra in Division 2. Even so, Weaver presented evidence that his mother subsequently reaffirmed the oral contract to make a will after the execution of the quitclaim deed. Specifically, the mother's statements in 1984 and 1993 — when construed in the light most favorable to the jury verdict and in the context of the original oral contract between the parties — indicate that the mother had decided to reaffirm the original contract she had with Weaver on the same terms. Weaver's subsequent conduct, moreover, was consistent with the mother having reaffirmed the contract, in that Weaver remained on the land, continued operating the farm, and made ongoing payments on the loan until he paid it off in 1993. Under these circumstances, the 1983 quitclaim deed did not preclude Weaver, as a matter of law, from recovering on his oral contract claim. See, e.g., *Bauder Finishing & Career College v. Kettle*, 128 Ga. App. 422, 425 (4) (197 SE2d 381) (1973) (upholding defendant's payment obligation despite prior

settlement and release agreement entered into by the parties, where, among other things, there was evidence that the defendant subsequently reaffirmed the obligation).

(b) *Value of the Property.* In order to secure the specific enforcement of a contract to make a will, the petitioner is "required to allege and prove the value of [decedent]'s estate and the value of the services which he rendered to [decedent]." *Ford v. White*, 255 Ga. App. 250, 253 (1) (564 SE2d 841) (2002).[2] This requirement arises out of the principle that

> since specific performance is an altogether equitable remedy, and not one which can be demanded, merely by virtue of a proven agreement, as a matter of absolute right, it must be made to further appear that the contract is equitable and just, and a court will be justified in refusing a decree of performance should inadequacy of price appear, or any other fact showing the contract to be unfair, or unjust, or against good conscience.

*Bullard v. Bullard*, 202 Ga. 769 (1) (44 SE2d 770) (1947). Since "[t]he fairness of the contract is usually to be determined as of the date of its making," *Mann v. Moseley*, 208 Ga. 420, 421 (1) (67 SE2d 128) (1951), Clements contends that there was insufficient evidence of the value of the farm at the time the oral contract to make the will was made, and thus insufficient evidence that the contract was fair and just when it was entered into between the parties. We are unpersuaded.

When all inferences are interpreted in the light most favorable to the verdict, the factfinder could have inferred that the original contract to make the will was entered into in the period of 1972-1973, when Weaver's father entered into the $37,000 loan on the farm property, and Weaver began running the chicken house in addition to the other farming operations and making all of the payments on the loan. Weaver also presented evidence that despite the quitclaim deed executed in 1983, his mother had reaffirmed the original contract by the following year. In turn, Weaver presented expert appraiser testimony concerning the fair market value of the farm property on dates in close proximity to when the oral contract was originally formed and when it was reaffirmed. Accordingly, there was sufficient evidence of the value of the farm property at the time the contract to make a will was made between Weaver and his

---

[2] There is an exception to this rule, not applicable here, if the agreement is "to give such personal, affectionate, and considerate attention as could not be procured elsewhere, and the value of such services could not be readily computed in money." *Ford*, 255 Ga. App. at 253 (1).

mother. See generally *Mann,* 208 Ga. at 421 (1) (in action to specifically enforce contract to make a will, evidence showed value of property at time contract allegedly made).

Clements, however, argues that the valuation testimony was insufficient because the appraiser only testified as to the value of the raw land and did not take into account the value of the farmhouse and other buildings. We are unpersuaded for two reasons.

First, the farmhouse and other buildings were located on the portion of the farm conveyed to Weaver during his mother's lifetime, and Clements does not dispute that Weaver was entitled to that portion. Hence, the fairness and justness of conveying that specific portion of the farm property to Clements did not need to be assessed for purposes of determining whether specific performance ought to be granted.

Second, we cannot say that the valuation testimony was inadequate as a matter of law because the appraiser specifically opined that the "primary value" of the farm was in the raw land and not in the physical structures, and that "the land value far exceed[ed] any improvement value." The appraiser's testimony thus would support the conclusion that the value of any buildings was negligible in light of the land valuation and ultimately was not necessary to a fair valuation of the farm property. Compare *Logan v. Logan*, 223 Ga. 574, 576-577 (2) (156 SE2d 913) (1967).

2. Clements moved to exclude Weaver from testifying to a conversation he had with his mother that allegedly was inconsistent with the terms of the quitclaim deed. Clements contends that the trial court erred in denying the motion because the testimony was precluded by the parol evidence rule. We conclude that while the admission of the testimony was erroneous, the error was harmless under the circumstances of this case.

As previously noted, the evidence showed that in 1983, Weaver executed and delivered to his mother a quitclaim deed for the stated consideration of one dollar in which he agreed to release any right, title, interest, claim or demand which he had or may have had in the farm property. Weaver was allowed to testify over objection that when the quitclaim deed was signed, his mother told him that "[s]he had to have all the deeds signed by all the kids, to sign everything back over to her so she could straighten the will out and leave the land to [Weaver]."

> Where a grantor of a quitclaim deed assigns all its right, title, interest, claim or demand in the tract of land conveyed, it is estopped from asserting any title to or interest in the property conveyed, acquired previously to the execution of the quitclaim deed. . . . A grantor cannot engraft upon a

written quitclaim deed an oral contract which would impose an additional affirmative obligation upon the grantee. Similarly, parol evidence is not admissible to place conditions upon a quitclaim deed which is absolute on its face.

(Citations and punctuation omitted.) *Southeast Timberlands v. Haiseal Timber*, 224 Ga. App. 98, 102 (479 SE2d 443) (1996). The quitclaim deed at issue unambiguously released all of Weaver's interest in the property and contained no conditions as to its delivery or validity. Weaver's parol testimony concerning his side agreement or conversation with his mother at the time of the execution of the quitclaim deed was inconsistent with the unconditional and absolute nature of the conveyance reflected within the body of the deed. Admission of Weaver's parol testimony thus was erroneous. See id. See also *Zorn v. Robertson*, 237 Ga. 395, 397-398 (228 SE2d 804) (1976) (concluding that it was improper for plaintiff to introduce parol evidence that consideration for having deeded the decedent certain property was the decedent's contemporaneous oral promise to reconvey the property to the plaintiff in her will); *Miller v. Shaw*, 212 Ga. 302, 308-309 (1) (92 SE2d 98) (1956) (same).

Despite the error, Clements has shown no harm. Weaver's testimony concerning the conversation with his mother was intended to show that the oral contract to make a will remained in force despite the execution and delivery of the quitclaim deed in 1983. But, as discussed above, Weaver presented, without objection, additional evidence of statements by his mother in 1984 and 1993 that could be construed as showing that the original oral contract to make a will had been reaffirmed on the same terms and was in full force despite the quitclaim deed. "Where there is other evidence relating to the same issues the error addresses, it is highly probable the error did not contribute to the judgment and is, therefore, harmless." (Citation and punctuation omitted.) *Murray v. Barrett*, 257 Ga. App. 438, 439-440 (1) (571 SE2d 448) (2002). It follows that the erroneous admission of Weaver's testimony does not require reversal. See *Moxley v. Moxley*, 281 Ga. 326, 328 (4) (638 SE2d 284) (2006) ("In order to have reversible error, there must be harm as well as error[.]") (citation and punctuation omitted).

*Judgment affirmed. Smith, P. J., and Phipps, J., concur.*

DECIDED NOVEMBER 18, 2009 —
RECONSIDERATION DENIED DECEMBER 4, 2009 — ▮▮▮▮▮▮

*Jones & Erwin, Anthony B. Erwin*, for appellant.

*Brunt & Hood, Thomas N. Brunt, Lance T. McCoy*, for appellee.