A95A1559. ROBERSON v. EICHHOLZ.
(462 SE2d 382)

BIRDSONG, Presiding Judge.

Attorney Benjamin Eichholz sued attorney David Roberson for breach of a joint representation contract. The client later obtained other counsel and reached a settlement of $1,300,000, of which Roberson received $300,000. The trial court granted partial summary judgment to Eichholz, ruling that the letter agreement between Eichholz and Roberson was a valid contract.

This is Roberson's statement of fact: "On January 2, [Roberson] entered into a contingency fee contract with [the client, Mincey] to provide legal representation. . . . Prior to the execution of the Mincey contract, Roberson and [Eichholz] discussed the joint representation of Mincey, which culminated in a memorandum . . . 'attempting' to set forth their understandings, with an agreement to enter into a formal written contract at a later date. Roberson proceeded to represent Mincey. . . . The complaint did not list Eichholz as an attorney of record. . . . The [formal written contract prepared by Eichholz] was never executed. On May 10, 1988, Roberson advised Eichholz that he was severing any relations they may have had. . . . Eichholz repeatedly attempted to coax Roberson into executing the contract [and] appeared, uninvited, at Roberson's office. He was asked to leave."

This statement of facts is incomplete to the point of being misleading. It implies that Roberson was first retained by Mr. Mincey (on January 2, 1988); that Roberson contemplated associating Eichholz in the case but never did so; and, in short, that Eichholz had

nothing to do with the case.

A more complete statement of facts reveals that it was Eichholz whom Mr. Mincey first contacted, in December 1987. Eichholz then associated Roberson because, according to Eichholz, Mr. Mincey wanted an African-American lawyer involved. The letter agreement by which Eichholz associated Roberson was entered January 1, 1988, the day before Mr. Mincey entered a fee agreement with Roberson. The letter written by Eichholz to Roberson states: "This letter shall attempt to set forth our mutual understandings and agreements that were reached in our office conference . . . in my office on January 1, 1988. . . . We discussed our joint efforts in regards to the representation of . . . Raymond Mincey against any and all parties as a result of his traffic accident that occurred on or about July 17, 1987. Based on my representation to you that the legal services contract which Mr. Mincey will eventually enter into will be based on 30 percent attorney fees prior to either the filing of the lawsuit or the [trial] and 40 percent after the filing of a lawsuit or the [trial], we have agreed that your share of attorney fees would be as follows: 5 percent of the first one million dollars as long as the total attorney fees are 30 percent. In the event that the 40 percent attorney fee provision is triggered, then your share of the attorney fees would be increased to 10 percent and there would be no cap on the fees. We have agreed that our firm will be responsible for the payment of any charges assessed against you or your firm as the result of Rule 11 of the Federal Rules. . . . Our obligation to pay any of [such charges] will be limited to any legal documentation, filing or motion that was prepared by our firm and jointly signed by you, but will not apply to any legal documentation, filing or motion that was prepared by you and not signed jointly by our firm. This letter shall further confirm that in the event that any civil liability results from your representation of the claim of [Mincey] . . . then the firm of Eichholz & Associates, P. C. hereby agrees to indemnify you and your firm from any damages. . . . Your main duty in the handling of this case will be for the transition of the representation of Mr. Mincey's interest from [another firm] to [Roberson's firm]. Once your firm has been properly engaged to represent the interests and claim of Mr. Mincey, then we will enter into a more formal and binding agreement which will set forth the parameters laid down in this letter. Once your representation has begun then we will take over virtually all of the aspects of the actual handling of the claim of Mr. Mincey including, but not limited to, investigation, collection of medical record, preparation of statement of claim for submission to the insurance company, handling of settlement negotiations and all attendant matters. You will also be called on whenever necessary to meet with the client and to keep him posted as to the progress of our efforts. . . . Please signify your acceptance and under-

standing of the terms contained herein by affixing your signature on the line provided below. Very sincerely yours EICHHOLZ & ASSO-CIATES, P. C. By: <u>Benjamin S. Eichholz [signed]</u> . . . Hereby read, approved and accepted by me <u>1st</u> day of January, 1988. David Roberson and Associates, P. C. By: <u>David R. Roberson [signed]</u>." (The clause providing five percent fee to Roberson was stricken through with "ten" written to the side, initialed by both Roberson and Eichholz, with the date "1-2-88.") *Held*:

1. No bona fide controversy exists that the letter agreement between the parties dated January 1, 1988 contains all terms and conditions necessary to form a valid and binding contract, and it is enforceable. The contract provisions did not require future negotiations or indicate that an agreement had not been reached on the essential conditions. The provisions contained the agreed-upon subject matter, consideration, terms, and the uncontroverted mutual assent by both parties to its terms. *Cole v. Shoffner*, 205 Ga. App. 65, 67 (421 SE2d 322). See *Green v. Johnston Realty*, 212 Ga. App. 656, 658 (442 SE2d 843); see also *Beckworth v. Beckworth*, 255 Ga. 241 (336 SE2d 782). The letter agreement of January 1, 1988 sets forth the responsibilities of the parties, their compensation, and even provides for indemnity by Eichholz' firm. It is not vague, and it is not lacking in consideration. OCGA § 13-3-40. If all the essential terms of a contract are agreed on, an agreement to enter another contract in the future does not destroy the validity of the contract entered. See *Cole*, supra; *Wells v. H. W. Lay & Co.*, 78 Ga. App. 364 (2) (50 SE2d 755). And see *Poulos v. Home Fed. Sav. &c.*, 192 Ga. App. 501 (385 SE2d 135).

Moreover, to the extent that a more formal contract was never entered because Roberson refused to do so, he is the party who breached the agreement to enter a separate contract while continuing to accept the fruits of the letter agreement by which Eichholz associated him. Equity therefore prevents *him* from complaining that another agreement was never entered. See OCGA § 13-4-23.

2. Further, the agreement was partially performed by Roberson. The doing of the contemplated acts furnished the consideration and mutuality for the original agreement, even if such agreement at its inception had been nudum pactum. *R. T. Patterson Funeral Home v. Head*, 215 Ga. App. 578, 584 (451 SE2d 812). To the extent that Roberson's removal of the case from Eichholz prevented Eichholz and his firm from performing their part of the bargain, Roberson's conduct excused Eichholz' performance, for "[i]f the nonperformance of a party to a contract is caused by the conduct of the opposite party, such conduct shall excuse the other party from performance." OCGA § 13-4-23.

*Judgment affirmed. Johnson and Smith, JJ., concur.*

514

*Allen & Perry, Roy L. Allen, Jr., Diane M. Morrell*, for appellant.

*Inglesby, Falligant, Horne, Courington & Nash, Sam P. Inglesby, Jr.*, for appellee.