A98A1035. PHILLIPS v. KEY SERVICES, INC. et al.
(510 SE2d 304)

RUFFIN, Judge.

Bruce Phillips sued Key Services, Inc. ("KSI") and Howard Blair, its president and principal shareholder, for breach of contract and for conversion after Phillips was terminated from KSI. KSI and Blair filed a joint motion for partial summary judgment on the issue of whether Phillips had been terminated from KSI for cause. The trial court granted the motion, and Phillips appeals. For reasons which follow, we reverse.

"To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of

law." *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). If a defendant, as the moving party, shows "that the documents, affidavits, depositions and *other* evidence in the record reveal that there is no evidence sufficient to create a . . . genuine issue as to any essential element of the plaintiff's claim," then the plaintiff, as the non-moving party, "cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue." (Emphasis supplied.) Id. "In reviewing a grant or denial of summary judgment, this Court conducts a de novo review of the evidence." *Eastside Properties v. Dept. of Transp.*, 231 Ga. App. 217 (498 SE2d 769) (1998).

Viewed in a light most favorable to Phillips as the nonmovant, the record shows that KSI is a corporation of which Blair was the sole shareholder. In 1987, Blair hired Phillips as KSI's sales manager. At the time Phillips was hired, he told Blair that he hoped eventually to become the majority owner of KSI. They discussed Phillips' intentions several times over the course of his employment with KSI. In addition, they discussed selling a percentage of Blair's stock in KSI to Phillips.

On December 20, 1990, Blair and Phillips executed an Employment Agreement and a Stock Purchase and Buy-Sell Agreement ("Buy-Sell Agreement") to formalize their discussions. According to the Buy-Sell Agreement, Blair agreed to sell ten percent of his KSI stock to Phillips and to transfer an additional twenty percent of KSI stock in May 1992 if certain performance standards were met. In the event Phillips was terminated, the Buy-Sell Agreement required Phillips to sell back his KSI stock either to Blair or to KSI. If Phillips was terminated for good cause, the value of his stock would be calculated based upon the lesser of the fair market value or the book value. However, if Phillips was not terminated for cause, the value of his stock would be calculated based upon the greater of the fair market or book value. Under Phillips' employment contract, KSI would have good cause to terminate Phillips "if, in the determination of the Board of Directors of the Company, [Phillips] has engaged in conduct or activities materially damaging to the business of the Company (it being understood, however, that neither conduct nor activities pursuant to [Phillips'] exercise of his good faith business judgment . . . shall be a ground for such determination by the Board of Directors of the Company)."

After the agreements were signed, Phillips continued to discuss with Blair his desire to purchase a controlling interest in KSI. However, negotiations between Blair and Phillips did not begin in earnest until 1995, when Phillips obtained financial backing from an investment group. In the beginning of December 1995, Phillips told Blair that, if the negotiations were not successful, he intended to resign.

In February 1996, Phillips suspected Blair was not negotiating

in good faith for the sale of KSI. In addition, he believed he was in danger of losing his financial backers. In order to bring matters to a head, on February 5, 1996, Phillips tendered his resignation, which provided that his last day at work would be March 8, 1996. According to Phillips, Blair asked him to reconsider resigning and asked him not to break off negotiations for the purchase of KSI.

When Phillips tendered his February 5 resignation, John Alexander, marketing manager for KSI, tendered his resignation as well. Although Alexander was not involved in Phillips' attempt to purchase KSI, Alexander supported Phillips' efforts. At the time Alexander gave two weeks notice, he was in the final stages of completing a bid proposal for a project for the Centers for Disease Control (CDC). However, Blair asked Alexander to leave immediately. Phillips asked Blair to reinstate Alexander because he needed his help in completing the CDC bid. Blair refused. Nevertheless, Alexander continued to work on the project with Phillips at Phillips' home. Phillips agreed to pay Alexander a five percent commission for completing the project, but Alexander subsequently renounced any right to a commission.

On February 9, 1996, Phillips presented Blair with a final offer for the purchase of KSI. Since Phillips and his financial backers considered Alexander to be a key employee at KSI, they required that he be reinstated as part of the sales agreement, but Blair refused. Blair acknowledged that requiring reinstatement of Alexander was the "deal killer."

On February 13, 1996, after the deal fell through, Phillips left a note for Blair advising him that his February 5 resignation still stood and that he was taking several days of vacation. Phillips also left Blair a copy of the CDC bid proposal which Phillips contends was 90 percent complete. Upon returning from vacation, Phillips planned to complete the bid proposal.

Upon receiving Phillips' February 13 note, Blair acknowledged he became "disappointed, upset [and a] little angry." He immediately decided to terminate Phillips "for cause." He called an emergency meeting of the Board of Directors (consisting of him and his wife) to formalize the decision to terminate Phillips. However, Blair stated he "made the decision on [his] own. It didn't need to go to the director's meeting."

In two enumerations of error, Phillips contends the trial court erred in granting partial summary judgment on the issue of whether he was terminated for cause. The trial court found that, pursuant to the December 1990 employment agreement, KSI's "Board of Directors determined that [Phillips'] conduct justified a termination for good cause." As with any contract, however, "this contract imposed upon each party a duty of good faith and fair dealing in the perfor-

mance and completion of their respective duties and obligations." *Toncee, Inc. v. Thomas*, 219 Ga. App. 539, 543 (4) (466 SE2d 27) (1995). In ruling in favor of the movants, the trial court found that Phillips failed to come forward with sufficient evidence to support a finding that the Board of Directors, in terminating him for cause, was not acting in good faith. We disagree.

In motions for summary judgment, a defendant, as the movant, can prevail by showing that no jury issue exists regarding an essential element of the plaintiff's claim. *Lau's Corp.*, supra. However, the plaintiff, as the nonmovant, "will survive summary judgment by presenting *any* evidence which establishes a jury issue regarding that element. Even slight evidence will be sufficient to satisfy the plaintiff's burden of production of some evidence on a motion for summary judgment; such evidence may include favorable inferences drawn by the court from evidence presented." (Citations omitted; emphasis in original.) *Garrett v. NationsBank*, 228 Ga. App. 114, 115-116 (491 SE2d 158) (1997). In the present case, we are persuaded that Phillips presented sufficient evidence of bad faith to survive summary judgment.

As an initial matter, we note that both the appellees and the trial court place significance on the fact that the decision to terminate Phillips was made by the Board of Directors. We have previously noted that it can be difficult to infer lack of good faith on the part of decision-makers when numerous people were involved in making the decision. See, e.g., *Johnson v. Auto/Mend*, 183 Ga. App. 311, 312 (359 SE2d 10) (1987) (summary judgment appropriate where six board members averred that they terminated an employee based on a good faith determination that the termination was in the best interest of the company). In this case, however, Blair made the decision to terminate Phillips and acknowledged that the Board of Directors' meeting was superfluous. Consequently, we look to Blair's actions in determining whether the Board acted in good faith.

Blair decided to terminate Phillips immediately after Phillips tendered his February 13 letter of resignation. We note that by resigning, Phillips triggered the provision in the Buy-Sell Agreement that required either Blair or KSI to repurchase Phillips' stock in KSI. The purchase price of the stock would *decrease* if Phillips was fired for cause. In other words, Blair and KSI stood to gain financially by terminating Phillips for cause before the effective date of his resignation.

Moreover, the evidence, construed in Phillips' favor, supports an inference that Blair's stated reasons for terminating Phillips were contrived. According to Blair, his decision to terminate Phillips was based, in part, on "Phillips' activity . . . in attempting to take over the Company by means of heavy-handed power plays and threats."

However, the record shows that Blair knew about Phillips' desire to take over KSI from the time he hired him. Moreover, despite any allegedly damaging effects "takeover" negotiations had on the company, Blair willingly negotiated with Phillips for the sale of KSI.

Blair claims that he terminated Phillips because of "threats" Phillips made. However, despite Phillips' threat to resign if settlement negotiations were not successful, the record reveals that while Phillips made this threat in early December, he was not actually fired until mid-February. Moreover, when Phillips first tendered his resignation on February 5, 1996, Blair made no move to fire him based on any implied threat. It was only after Phillips reiterated his decision to resign eight days later that Blair called for his termination for cause.

Blair also contends that Phillips was terminated for "disrupting the morale of the Company's employees." In support of this contention, Blair provided affidavits from three current employees of KSI who stated that Phillips' efforts to purchase the company were disruptive and had a negative impact on morale. However, any such disruption on Phillips' part did not stop Blair from continuing to negotiate with Phillips for the sale of KSI.

Finally, Blair asserts that Phillips' abandonment of his work warranted his termination for cause. Specifically, Blair testified in his deposition that KSI's sales were declining and that Phillips failed to meet his obligations with regard to completing the CDC bid. On the other hand, Blair acknowledged that although the number of sales declined, revenues had increased during Phillips' tenure. With regard to the CDC bid, it is undisputed that, despite Phillips' alleged abandonment of the project, the bid was completed in time and KSI was a finalist on the project.

Based on the foregoing, we find that there is some evidence from which a jury could infer lack of good faith on the part of Blair in terminating Phillips. Therefore, the trial court erred in granting partial summary judgment on the issue of whether Phillips was fired for good cause.

*Judgment reversed. Pope, P. J., and Beasley, J., concur.*

DECIDED DECEMBER 3, 1998.

*Smith, White, Sharma & Halpern, Furman Smith, Jr.*, for appellant.

*Powell, Goldstein, Frazer & Murphy, W. Scott Sorrels, James B. Richardson*, for appellees.