A02A1611, A02A1815. COLDMATIC REFRIGERATION OF
CANADA, LTD. v. HESS et al.; and vice versa.
(572 SE2d 6)

MILLER, Judge.

Hess Polyurethanes, Inc. (HPI) and its principal MacLean Hess agreed to sell HPI stock to Coldmatic Refrigeration of Canada, Ltd. When the sale did not go through, Coldmatic sued HPI and Hess for breach of contract and for fraud. The trial court granted HPI and Hess summary judgment on the breach of contract count but not on the fraud count. Coldmatic appeals the summary judgment entered on the breach of contract count, and HPI and Hess cross-appeal the denial of summary judgment on the fraud count. We hold that since the agreement was only an agreement to agree, both the breach of contract count and the fraud count fail. Accordingly, we affirm in part and reverse in part.

Following lengthy negotiations, HPI and Hess on November 2, 1999, agreed to sell a minority interest in HPI to Coldmatic (a large customer) for a specified price. The written document memorializing the agreement, however, stated in its initial paragraph that the document "will serve as the *basis of understanding* between the parties as to the final preparation of documents between the parties to be prepared by legal counsel of Hess Polyurethane. This document shall serve as the *guide to the intention of both parties, in the spirit of negotiation*. Legal counsel will *take direction* from this Agreement." (Emphasis supplied.) Referencing existing drafts of a share purchase agreement and a shareholders' agreement, the November 2 document outlined inter alia that (1) those agreements would have to be modified in unspecified respects to conform to Georgia law, (2) the

---

[5] *Brewer v. State*, 224 Ga. App. 656, 658 (3) (481 SE2d 608) (1997).

noncompete provisions in the agreements would be adjusted in unspecified ways, and (3) the stock sale restriction provision in the shareholders' agreement would be modified in certain respects with "all other reasonable terms to remain" so that Coldmatic would have "some say who the new majority partner will be. . . ." Coldmatic's principal testified that the parties believed this document to constitute a final and binding agreement. Coldmatic purchased products from HPI at higher prices in anticipation of the deal.

Over the next several months, the parties exchanged some correspondence on proposed specific changes to the drafts of the share purchase and shareholders' agreements. As a result of secret negotiations with a third party that had been going on simultaneously, HPI and Hess then sold HPI's primary assets to that third party and refused to sell stock in HPI to Coldmatic.

Coldmatic sued HPI and Hess, asserting claims for breach of the November 2 agreement and for fraud in promising in that agreement to sell stock to Coldmatic with no present intent to perform. HPI and Hess moved for summary judgment on both claims on the ground that the November 2 contract was unenforceable as an agreement to agree. The trial court agreed that the contract was unenforceable but granted summary judgment on the breach of contract count only. In Case No. A02A1611, Coldmatic appeals the grant of summary judgment on the breach of contract count, and in Case No. A02A1815, HPI and Hess cross-appeal the denial of summary judgment on the fraud count.

### Case No. A02A1611

1. "Unless an agreement is reached as to all terms and conditions and nothing is left to future negotiations, a contract to enter into a contract in the future is of no effect." (Citations and punctuation omitted.) *Hartrampf v. Citizens & Southern Realty Investors*, 157 Ga. App. 879, 881 (1) (278 SE2d 750) (1981). Thus, "[a]n agreement to reach an agreement is a contradiction in terms and imposes no obligation on the parties thereto." (Citations and punctuation omitted.) Id. *Hartrampf* explained that "[t]o be final an agreement must comprise all the terms which the parties intend to introduce in it. Where it is evident from a written instrument, that the parties contemplated that it was incomplete, and that a binding agreement would be made subsequently, there is no agreement." (Citations and punctuation omitted.) Id.; see *Autrey v. UAP/GA AG CHEM*, 230 Ga. App. 767, 769 (1) (a) (497 SE2d 402) (1998) ("The parties must agree on all essential terms for a contract to be enforceable. [Cit.]"); *Poulos v. Home Fed. Sav. &c. Assn.*, 192 Ga. App. 501, 503 (2) (385 SE2d 135) (1989); compare *McMurray v. Bateman*, 221 Ga. 240, 253 (2) (144

SE2d 345) (1965) (a contract containing agreed-upon essential terms is not rendered incomplete where only minor details incidental to the performance of the contract are left to be agreed upon); *Roberson v. Eichholz*, 218 Ga. App. 511, 513 (1) (462 SE2d 382) (1995) (where all essential terms agreed upon, contract is enforceable).

Here it is evident from the November 2 instrument that the parties contemplated that it was incomplete and that future negotiations were in store regarding essential terms. The first paragraph of the agreement specified that it was only a "basis of understanding between the parties" to be used by legal counsel for "direction" and as a "guide" "in the spirit of negotiation." The remainder of the agreement continued in this same spirit, with the following provisions exhibiting that the agreement was incomplete on some essential terms:

i. "The agreement to be written with Georgia Law and all such relevant changes to this need to be done by counsel. *Coldmatic Refrigeration of Canada Ltd. to be advised of any significant change from the Agreements provided.*" (Emphasis supplied.) The instrument twice more stated that the drafts of the share purchase agreement and of the shareholders' agreement had to be changed or modified as needed or applicable "with respect to Georgia law." The needed or applicable changes, significant or otherwise, were not specified.

ii. The noncompete provisions of the share purchase agreement were to be modified to eliminate Hess's noncompete obligations, but the modifications needed to ensure that Hess could not "perform any act that will willfully harm the company after his departure." Such acts were not specified.

iii. Section 9 of the shareholders' agreement was to be modified to disallow a proposed sale by any party of its HPI stock unless all the stock in HPI were sold as a package (if so requested by another shareholder) on the same terms and conditions. "The other shareholders will have to agree to the terms and conditions of the sale (reasonable conditions)." The November 2 instrument did not identify a standard to measure what conditions would be reasonable.

iv. After these modifications to Section 9, "all other reasonable terms [were] to remain. . . ." Further, "[a]s minority shareholders, Coldmatic Refrigeration of Canada Ltd. need[s] to ensure that they have some say who the new majority partner will be, if they do not use the first right of refusal clause." Which terms would be reasonable and would be designed to give Coldmatic "some say who the new majority partner will be" were not specified.

v. Section 17 of the shareholders' agreement, which broadly prohibited all shareholders from competing with HPI, "needs to be adjusted. . . ." How Section 17 was to be adjusted and whether Hess not having a noncompete obligation in the share purchase agreement

meant that the other shareholders in the shareholders' agreement also did not have such an obligation were essential terms not agreed upon.

Since several key terms of the November 2 instrument were incomplete and thus to be negotiated in the future, the instrument was nothing more than an agreement to agree and therefore unenforceable. The court correctly granted summary judgment on the breach of contract claim.

### Case No. A02A1815

2. The fraud count asserted that at the time of making the November 2 instrument, HPI and Hess did not intend to honor the promise contained therein to sell ownership interests in HPI. This claim must fail for the simple reason that "fraud cannot be predicated on a promise which is unenforceable at the time it is made." (Citation and punctuation omitted.) *Albee v. Krasnoff*, 255 Ga. App. 738, 743 (4) (566 SE2d 455) (2002), quoting *Autrey*, supra, 230 Ga. App. at 769 (1) (a); see *Pelletier v. Stuart-James Co.*, 863 F2d 1550, 1555-1556 (11th Cir. 1989) ("Where a contract is unenforceable, an action for damages cannot be maintained on the ground of fraud in refusing to perform the contract, even though the promisor at the time of making the oral contract may have had no intention of performing it. [Cits.]"). Since the November 2 agreement to sell stock to Coldmatic was unenforceable as an agreement to agree, the fraud claim predicated thereon also fails. See *Autrey*, supra, 230 Ga. App. at 769-770 (1) (a). The trial court erred in denying summary judgment on this count.

The trial court should have entered summary judgment in favor of HPI and Hess on both counts of the complaint.

*Judgment affirmed in Case No. A02A1611. Judgment reversed in Case No. A02A1815. Blackburn, C. J., and Johnson, P. J., concur.*

DECIDED SEPTEMBER 19, 2002 —
RECONSIDERATION DENIED OCTOBER 8, 2002 —

*Chorey, Taylor & Feil, Otto F. Feil III*, for appellant.
*Freed & Berman, Gary S. Freed, William J. Piercy*, for appellees.