## A03A1258. AULDRIDGE v. RIVERS.
### (587 SE2d 870)

ADAMS, Judge.

R. S. Auldridge appeals the grant of summary judgment to his business partner, James Rivers, on his claim for specific performance on the sale of his corporate stock. Auldridge contends that the trial court misinterpreted and misconstrued the terms of an agreement that obligated him to sell his stock to Rivers.

Rivers and Auldridge incorporated a business known as Bo's Machines, Inc. on October 26, 1992. Thereafter, Rivers operated Bo's Machines on a day-to-day basis while Auldridge remained as silent partner. On June 22, 1995, Rivers and Auldridge, who each owned fifty percent of all corporate stock, executed a document in which they individually agreed not to sell their corporate stock for ten years from the date of incorporation but also agreed that they could, by mutual agreement, sell all of the stock to a third party. In the event that Rivers died or became incapacitated during the same ten-year period, the agreement authorized the sale of the company at fair market value. Paragraph 4 provided as follows:

> Ten (10) years from the date of incorporation of the Company, James Rivers agrees to purchase all of the stock owned by R. S. Auldridge; the purchase price shall be for book value as determined by the CPA then employed by the Company for the purpose of preparing tax returns, balance sheets and profit and loss statements.

The agreement further stated, "[t]he purchase price, as determined pursuant to paragraph 5 [sic] above, shall be payable in cash or on terms agreed to by the seller and buyer." In addition, the document recognized the existence of a promissory note dated May 30, 1993, in the amount of $47,000, showing a corporate debt owed to Rivers, individually, for equipment he had sold to the company. Rivers agreed to maintain the equipment and to forgo payment on that promissory note until September 26, 2002. The agreement also required "that the stock owned by each shall be indorsed with the following language: This stock is subject to an agreement between James Rivers and R. S. Auldridge dated June 22, 1995."

At all relevant times, Robert E. Harkrider, Jr. served as the corporation's CPA, preparing tax returns, balance sheets, and profit and loss statements. In July 2002, Rivers approached Auldridge about purchasing Auldridge's 50 percent interest. Rivers testified that "I reminded Mr. Auldridge that our buy-sell agreement was due in October and told him that we would get the information from Mr. Harkrider at the end of September and then we would know what I had to pay him in cash in October 2002." Thereafter, the parties' attorneys exchanged correspondence about the stock purchase. On September 18, 2002, Auldridge's attorney wrote, "[s]ince the contract calls for a Closing on or about October 26, it seems to me that Mr. Harkrider should give us his figures as of the end of the third quarter and projected through (later Verified) October 26." The financial statements prepared by Harkrider indicated the corporation's total equity as $228,449.94 as of October 31, 2002.[1] When Rivers tendered the purchase price of $114,224.97 to Auldridge and "requested a conveyance of his interest and all of his stock in said corporation, the said purchase price being book value . . . [Auldridge] refused to accept the tender and refused to make the conveyance." After Auldridge refused to sell his stock, Rivers filed suit seeking specific performance to enforce the provisions of the June 1995 agreement.

Auldridge answered, counterclaimed, and moved for judgment on the pleadings or in the alternative for summary judgment. Auldridge claimed, inter alia, that "the Agreement merely evidences the Plaintiff's grant to Auldridge of an irrevocable option to sell his capital stock of Bo's Machines, Inc. (the 'Stock') to the Plaintiff. The option fixes only the obligation of the Plaintiff to buy the Stock without binding Auldridge to sell his Stock." Auldridge asserted that Rivers' claim for specific performance must fail because "the price to be paid for the Stock is inadequate, unfair, unjust, and against good conscience."

Rivers filed cross-motions for summary judgment and for judgment on the pleadings. At the motion hearing, Auldridge maintained that Paragraph 4 created "a put option" in his favor so that after ten years he could put his stock up for sale to Rivers if he elected to do so. Auldridge contended that had he chosen to sell, then Rivers would have been obligated to buy his stock at book value. Auldridge argued that the terms did not require him to sell his stock. He claimed that the document "is really not a binding contract," because it should have said something to the effect that James Rivers agrees to purchase and R. S. Auldridge agrees to sell but it did not do so.

Noting the omission of the phrase "R. S. Auldridge agrees to

---

[1] Auldridge does not dispute Harkrider's calculation of the book value.

sell," the trial court succinctly observed, "[t]hat's where he's hanging his hat." But Rivers then pointed out that it was Auldridge's lawyer who had drafted the agreement and that the minutes from the June 22, 1995 meeting of the Board of Directors refer to the contract as a "Buy/Sell Agreement."

The trial court denied Auldridge's motion and granted summary judgment to Rivers. The court found the contract to be "valid and enforceable" and supported by valuable consideration. Auldridge appeals.

In three somewhat overlapping claims enumerated as error, Auldridge argues that the trial court erred in its legal analysis of option contracts. He contends that the trial court erred in deciding that the agreement was not an option contract and "by ruling as a matter of law that the Contract constitutes an offer by [him] to sell, accepted by Rivers before the offer was revoked by [him]." Auldridge also asserts that the trial court erred in denying his motion for summary judgment because the contract did not compel him to sell his stock since he did not elect to exercise his option of selling his stock to Rivers. We find no merit to these claims. The dispositive issue is whether the agreement created an enforceable obligation requiring Auldridge to sell his capital stock to Rivers for book value. After applying the standard rules of contract construction, we find that it does.

On appeal, this Court reviews questions of law de novo. *Tachdjian v. Phillips*, 256 Ga. App. 166, 168 (568 SE2d 64) (2002). The construction of the terms of a written contract is generally a matter of law for the trial court. OCGA § 13-2-1; *Peachtree &c. Investors v. Reed Drug Co.*, 251 Ga. 692, 694 (1) (308 SE2d 825) (1983). Absent ambiguity that the trial court is unable to resolve using the statutory rules for contract construction, "it remains the duty of the trial court to look to the language of the contract with a view to effectuating the intent of the parties." (Citations and punctuation omitted.) *Winburn v. McGuire Investment Group*, 220 Ga. App. 384, 385 (1) (469 SE2d 477) (1996).

Georgia law recognizes and protects the freedom of parties to contract. *NEC Technologies v. Nelson*, 267 Ga. 390, 396 (4) (478 SE2d 769) (1996). "In general, parties should be entitled to contract on their own terms without the courts saving one side or another from the effects of a bad bargain; they should be permitted to enter into contracts that may actually be unreasonable or which may lead to hardship." (Citation omitted.) *William J. Cooney, P.C. v. Rowland*, 240 Ga. App. 703, 705 (524 SE2d 730) (1999). "[C]ompetent parties are free to choose, insert, and agree to whatever provisions they desire in a contract[,] unless prohibited by statute or public policy." (Citations and punctuation omitted.) *Southern Prestige Homes v. Moscoso*, 243 Ga. App. 412, 415 (3) (532 SE2d 122) (2000).

Here, the parties entered a buy-sell agreement under which they agreed that ten years from the date of incorporation (October 26, 1992), Rivers would purchase all stock in Bo's Machines owned by Auldridge, at the purchase price of "book value as determined by the CPA then employed by the Company. . . ." See *Phillips v. Key Svcs.*, 235 Ga. App. 564, 565 (510 SE2d 304) (1998). The agreement specified the details of the stock sale, was supported by consideration, and had the uncontroverted mutual assent by the parties to its terms. See *Roberson v. Eichholz*, 218 Ga. App. 511, 513 (1) (462 SE2d 382) (1995). While it is true that the contract did not explicitly say that Auldridge would sell his stock to Rivers, no other meaning makes sense and no other interpretation is plausible when the contract is considered as a whole. See *Atlanta Dev. v. Emerald Capital Investments*, 258 Ga. App. 472, 478 (1) (574 SE2d 585) (2002) ("The law favors a construction that will uphold the contract as a whole, and the entire contract should be read in arriving at the construction of any part."). Moreover, where construction of a contract is doubtful, any ambiguity must be resolved in favor of the nondrafting party. *Kennedy v. Brand Banking Co.*, 245 Ga. 496, 500 (2) (266 SE2d 154) (1980). Thus, even assuming arguendo that the language is ambiguous, such ambiguity must be construed most strongly against Auldridge, whose lawyer drafted the contract. *Baker Mtg. Corp. v. Hugenberg*, 145 Ga. App. 528, 529 (1) (244 SE2d 56) (1978). Having considered the contract as a whole, we find the provisions at issue were valid, binding, and enforceable. See *Moscoso*, 243 Ga. App. at 415 (3). The trial court did not err in so finding.

*Judgment affirmed. Andrews, P. J., and Barnes, J., concur.*

DECIDED SEPTEMBER 25, 2003.

*William A. Trotter III*, for appellant.
*Jay M. Sawilowsky*, for appellee.