**SECOND DIVISION**
**MILLER, P. J.,**
**BROWN and GOSS, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 11, 2019**

# In the Court of Appeals of Georgia

A18A1536. LAYMAC v. KUSHNER et al.

BROWN, Judge.

James Laymac appeals from summary judgment orders entered in his action against Lending Solutions, Inc. d/b/a LSI Mortgage Plus ("LSI"), David Kushner, and Kevin Pezzani (collectively "defendants") in connection with the formation and operation of LSI, a mortgage brokerage business. Laymac contends that the trial court erred in granting summary judgment to defendants on his breach of contract and partnership claims, and in denying his motion for summary judgment on his breach of contract claim and on defendants' breach of contract claim. For the reasons discussed below, we affirm in part, reverse in part, vacate in part, and remand this case to the trial court with direction.

To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c). A defendant may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case.

(Emphasis omitted.) *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). So viewed, the record shows that Laymac incorporated LSI in May 2000 for the purpose of operating a mortgage lending business. LSI held a state license as a mortgage lender, and as of January 26, 2015, the company conducted business in 36 states. In 2003, Laymac met Kushner and Pezzani through their work at other mortgage lenders, and Pezzani joined Laymac as a loan officer at Mortgage Now, Inc. (MNI), where they devised a plan "to build a national mortgage brokerage business through the use of internet leads provided by LendingTree Dot Com and similar type companies." According to Laymac, the three men verbally agreed that each was a "one third owner" of LSI. At that time, Kushner began operating LSI as a marketing company, while Laymac and Pezzani continued working at MNI. On December 31, 2003, Laymac resigned as a director of LSI, and tendered back to the company 10,000

2

shares of stock,[1] which were then issued to Kushner, who became LSI's sole officer, director, and employee.

Beginning in the summer of 2006, Laymac and Pezzani left MNI and joined Kushner at LSI. On August 4, 2006, Laymac signed an employment agreement to serve as LSI's Finance Manager. The agreement was for a one-year term, but provided that "[a]t the end of the Initial Term, the term of this Agreement may be renewed and extended upon the mutual agreement of the parties hereto." Laymac's employment was terminable at will. Laymac claims that LSI had inadequate working capital at the time he came over from MNI, so he contributed $282,000 to LSI's corporate treasury. Laymac also used his own credit to secure bank lines of credit and credit cards for LSI. All three men guaranteed loans on behalf of LSI, including Laymac guaranteeing over $50 million of LSI debt.

On January 1, 2008, Kushner, Laymac, and Pezzani executed a Letter Agreement concerning the operation of LSI,[2] wherein the three men appointed

---

[1] Laymac believed it would be improper for him to own LSI stock while working for MNI.

[2] Kushner and Laymac signed the agreement on February 12, 2008. Similar agreements had been executed by Laymac, Kushner, and Pezzani on January 1, 2006, and January 1, 2007.

themselves directors in the company, with each possessing separate roles: Laymac served as CFO; Kushner was President in charge of marketing; and Pezzani was Secretary in charge of operations. The Letter Agreement begins as follows: "I[, Pezzani,] wish to confirm certain agreements that we have reached with respect to, among other things, the operations of [LSI], the imposition of restrictions on transfers of our shares in [LSI] and the purchase of those shares by one or more of us upon the occurrence of certain events." The Letter Agreement further provided that Laymac, Pezzani, and Kushner were the owners of record and beneficiaries of 10,000 shares of 30,000 outstanding shares of LSI, and that each were employees at will. It set forth the parties' compensation plan, provided that LSI was to be taxed as an "'S corporation,'" and that LSI would pay life insurance for each in the amount of $3 million, and it contained an entire agreement clause. According to Laymac, between 2006 and 2013, he, Kushner, and Pezzani "worked in concert to make all material decisions to the operation of LSI." As provided in the Letter Agreement, Laymac affirmed that the company also maintained "key man" insurance on the life of each in the principal amount of $3 million.

In a subsequent Share Subscription Agreement, dated February 13, 2008, Laymac subscribed to 10,000 shares of LSI common stock and agreed to pay $1,000

4

to LSI upon issue of the common stock and acceptance of the subscription. Laymac never paid for any LSI stock and no stock certificate was ever issued to or delivered to him. In his affidavit, Laymac averred that "[a]t all time[s] both Kushner and Pezzani understood that [Laymac] believed that he owned 10,000 shares of LSI (one third the total issued and outstanding shares), or had the right to acquire 10,000 shares." Laymac deposed that he does not hold a stock certificate with his name on it that shows he owns any shares of stock in LSI, and he does not know if he ever paid $1,000 to buy "[his] stock." None of LSI's tax returns reviewed and approved by Laymac show him as a shareholder; rather, since at least 2007, LSI reported on its state and federal tax returns that Kushner was its sole shareholder, and Kushner averred that he has been LSI's sole shareholder since 2004.[3] LSI's lawyer averred that "[a]s sole shareholder of LSI, Kushner is a Direct Owner of LSI. As a Direct Owner,

---

[3] Laymac averred that

[b]etween 2006 and 2013[,] the company paid Kushner's taxes as a distribution every year and then prepared a mock tax return as if he did not receive a K-1. The mock return was . . . intended to distribute taxes evenly among [the three.] The reason for the single return was to avoid having both [Laymac] and Pezzani having to file returns in 38 separate states at significant cost to LSI.

5

Kushner was approved by each state regulator in which LSI is licensed to originate mortgage loans." The lawyer's affidavit implies that Laymac could never become a control person of LSI because he never completed the required forms, most likely because he has a criminal background and could not be approved by state licensing regulators. In his affidavit, Laymac stated that "[a]t no time between 2003 and July 24, 2013[,] did [he] express in words or deeds to anyone that [he] was not a one-third owner of LSI. At all times both Kushner and Pezzani understood that [Laymac] believed that he owned 10,000 shares of LSI . . . or had the right to acquire 10,000 shares."

The company operated under the Letter Agreement until July 2013, when Kushner and Pezzani terminated Laymac's employment effective July 24, 2013, for misleading LSI's management and failing to comply with LSI's written Secondary Market Interest Rate Risk Policy ("IRRP"), resulting in losses to LSI in excess of $1.6 million. On August 2, 2013, LSI's corporate counsel sent correspondence to Laymac confirming his termination. Later that month, Kushner wrote to Laymac pointing out that he never paid the subscription price for the stock, but noting that, "[r]egardless, if there is any doubt about whether your subscription agreement was cancelled, LSI hereby cancels your subscription agreement, either pursuant to LSI's

6

rights under OCGA § 14-2-621 or under general contract principles as a result of your over five-year failure to perform under the subscription agreement, or both."

Laymac filed suit on September 6, 2013, alleging that from mid-2006 until July 24, 2013, he worked with Pezzani and Kushner as business partners of LSI until defendants physically removed him from the premises of LSI. Laymac asserted claims for tortious deprivation of an interest in a corporation (Count I), breach of fiduciary duty (Count II), money had and received and unjust enrichment (Count III), and attorney fees and expenses of litigation (Count IV). The gravamen of Laymac's claims was based upon the Letter Agreement and the Share Subscription Agreement.

Laymac later amended his complaint, adding additional facts as well as a claim for breach of contract (Count IV), alleging that

> [o]n or about July 24, 2013, [defendants] breached the Letter Agreement and Subscription Agreement including their obligation of good faith and fair dealing by: (a) denying Plaintiff his ownership in Defendant LSI (b) denying Plaintiff his right to participate in making decisions with respect to LSI; (c) terminating Plaintiff as an employee of Defendant LSI; (d) denying Plaintiff any further share of the profits of LSI and all compensation due him under the Letter Agreement; and (e) failing or refusing to issue to Plaintiff stock in LSI.

7

And that the "actions of [defendants] in breaching the terms of [the] Letter Agreement and Subscription Agreement, constitute a breach of [Laymac's] contract with [d]efendants."

Defendants filed an answer and counterclaim, which they amended several times, alleging 12 counts, including breach of fiduciary duty, breach of duty of loyalty, breach of contract, and breach of duty of good faith and fair dealing. Defendants allege that Laymac violated the company's IRRP, lied about violating it, and then attempted to cover up his violations. They also contend that he converted money belonging to LSI, misused LSI credit cards for his own personal benefit, and wrongfully recruited LSI employees.

On January 26, 2015, both sides moved for summary judgment. Defendants filed a motion for partial summary judgment on Counts I, II, and IV of the amended complaint, and Laymac filed a motion for partial summary judgment on Counts III and IV of the complaint, and on nine of the twelve counts of the counterclaim. On June 10, 2016, the trial court ruled on both motions. The trial court granted summary judgment to defendants on Laymac's claims for tortious deprivation of an interest in a corporation (Count I) and breach of fiduciary duty (Count II), but denied it as to his claim for attorney fees (Count IV). As to Laymac's motion for partial summary

judgment, the trial court denied the motion as to Count III (money had and received and unjust enrichment) of the complaint and Count III (breach of contract) of the counterclaim, but granted it as to Counts I, II, IV, VII, VIII, IX, and X of the counterclaim. The trial court designated its order as a final judgment pursuant to OCGA § 9-11-54 (b). In granting summary judgment to defendants on Laymac's claims for tortious deprivation of business interest and breach of fiduciary duty, the trial court ruled that Laymac "has not produced evidence he has an ownership interest in [LSI] to support [those claims]. Plaintiff's admission that he does not know whether he paid for his alleged stock does not create an issue of material fact."

On June 15, 2016, five days after the trial court entered its summary judgment order, Laymac amended his complaint a second time, reasserting his originals claims, but adding a claim for breach of fiduciary duties in partnership venture (Count V). Defendants then amended their answer and counterclaim asserting defenses of res judicata, collateral estoppel, res gestae, or law of the case.

On November 4, 2016, defendants Kushner and LSI filed a second motion for summary judgment, arguing that the trial court's previous order effectively eliminated the claims Laymac asserted in his second amended complaint, and that they were, therefore, entitled to summary judgment on Counts I, II, IV, and V of the second

9

amended complaint. On January 23, 2017, Pezzani moved for summary judgment on the same ground.

On May 25, 2017, the trial court issued two orders. In the first order, styled a supplemental order to its June 10, 2016 order, the trial court indicated that it "misidentified Count IV of Plaintiff's first amended Complaint as 'Count IV: Attorney's Fees' when it was, in fact, 'Count IV: Breach of Contract.' Plaintiff's claims related to attorney[ ] fees were instead to be found in Count VI of his first amended Complaint." The trial court then granted summary judgment to defendants on Laymac's claim for breach of contract (Count IV of the amended complaint). In the second order, granting defendants' second motions for summary judgment, the trial court ruled that Counts I, II, and V of the second amended complaint were barred by res judicata. Laymac appeals these orders, alleging that the trial court erred (1) in granting summary judgment to defendants on his breach of contract claim (Count IV); (2) in granting summary judgment to defendants on his claim for breach of fiduciary duties in partnership venture (Count V); (3) in denying his motion for summary judgment on his breach of contract claim (Count IV); and (4) in denying his motion for summary judgment on defendants' claim for breach of contract (Count III of the counterclaim).

1. As an initial matter, Kushner and LSI, joined by Pezzani, move this Court to dismiss Laymac's appeal to the extent that it assigns error to the trial court's June 10, 2016 order, which was designated a final order pursuant to OCGA § 9-11-54 (b). They contend that Laymac has waived his right to appeal any matters addressed in that order because he failed to appeal the order within thirty days. Specifically, they argue that because the trial court's order implicitly ruled on Laymac's breach of contract claim, he is precluded from appealing the trial court's grant of summary judgment on that claim. Laymac contends that the motion should be denied because he is appealing only claims where judgment was not entered.

The law is clear that the right to review is lost when an appellant fails to file a notice of appeal within thirty days of an order designated as a final judgment under OCGA § 9-11-54 (b). *Lewis v. Carscallen*, 274 Ga. App. 711, 713 (1) (618 SE2d 618) (2005). Here, the trial court designated its June 10, 2016 order a final judgment pursuant to OCGA § 9-11-54 (b). While defendants are correct that Laymac's appellate brief delves into the trial court's finding in the June 10, 2016 order that he had no rights in LSI because LSI shares were never issued to him, the error of law alleged to have been made by the trial court was its May 2017 summary judgment ruling on Laymac's breach of contract claim. We acknowledge that some of the trial

11

court's rulings in the June 10, 2016 order implicate Laymac's breach of contract claim, however, the trial court did not make an explicit ruling on that claim until May 25, 2017. To partially dismiss Laymac's appeal as urged by defendants would unfairly penalize the appealing party for mistakes made by the trial court.[4] Accordingly, the motions to dismiss are denied.

2. In two related enumerations of error, Laymac contends that the trial court erred in granting summary judgment to defendants on his breach of contract claim and in denying his motion for summary judgment on that same claim. Laymac contends the trial court's ruling was erroneous because the parties intended for Laymac to be a shareholder in LSI even though he was never issued shares of stock in the company. Laymac points out that the trial court recognized that he, Kushner, and Pezzani had entered into a joint venture, but then ignored the significance of that joint venture, as well as the Letter Agreement and the Share Subscription Agreement. Defendants counter that the Letter Agreement "did not define the ownership structure of LSI *as it was*, but *as it would be* if Laymac performed certain future acts within a specified timeframe. . . ."(Emphasis in original.) We agree with Laymac.

---

[4] We note that defendants could have moved the trial court to clarify or reconsider its order to make an express ruling on Laymac's breach of contract claim.

12

The trial court ruled that the Letter Agreement established certain operational guidelines and procedures, but that it was not a "subscription agreement." It also characterized many of the statements in the Letter Agreement as "aspirational," and implied that it was not an agreement. The trial court also found that Laymac's execution of the Share Subscription Agreement was insufficient to establish him as a shareholder of LSI because he never paid the purchase price for the stock. We disagree with these conclusions.

"The law does not favor destruction of contracts on grounds of uncertainty. Nevertheless, indefiniteness in subject matter so extreme as not to present anything upon which the contract may operate in a definite manner renders the contract void." (Punctuation and footnotes omitted.) *Kitchen v. Insuramerica Corp.*, 296 Ga. App. 739, 743 (1) (675 SE2d 598) (2009).

> Under Georgia law, a contract does not exist unless the parties agree on all material terms. A contract cannot be enforced if its terms are incomplete, vague, indefinite or uncertain. Thus, a court will not enforce an agreement where it is left to ascertain the intention of the parties by conjecture. An indefinite contract, however, may acquire more precision and become enforceable because of the subsequent words or actions of the parties.

(Citations, punctuation and footnotes omitted.) *Aukerman v. Witmer*, 256 Ga. App. 211, 214 (1) (568 SE2d 123) (2002). "The test of an enforceable contract is whether it is expressed in language sufficiently plain and explicit to convey what the parties agreed upon." (Citation, punctuation and footnote omitted.) *Kueffer Crane & Hoist Svc. v. Passarella*, 247 Ga. App. 327, 330 (3) (543 SE2d 113) (2000).

The evidence shows that the Letter Agreement was not aspirational. The first sentence of the agreement specifies, "I wish to *confirm certain agreements* that we have reached with respect to, among other things, the operation of [LSI]. . . ." (Emphasis supplied.) Compare *Coldmatic Refrigeration of Canada v. Hess*, 257 Ga. App. 753, 754-755 (1) (572 SE2d 6) (2002) (instrument contemplating future negotiations regarding essential terms is nothing more than agreement to agree and therefore unenforceable). It goes on to state that "[e]ach of us *is* the owner, of record and beneficially, of $10,000, or one-third of the outstanding shares of [LSI]." (Emphasis supplied.) This provision expressly assigns equal ownership of 100 percent of the company in Laymac, Kushner, and Pezzani, and all three individuals agreed to this arrangement. The concluding paragraph of the Letter Agreement is further evidence that the parties intended to create a binding agreement between the three of them: "This letter, when executed and returned by you to me, will constitute

14

a binding agreement between [LSI] and each of us that will be enforceable in accordance with its terms and that cannot be modified or amended or terminated other than by written agreement executed by [LSI] and each of us."

In characterizing the Letter Agreement as aspirational, the trial court noted that "[t]he letter states that the three individuals would become equal, one-third shareholders 'upon the occurrence of certain events.'" The trial court seems to have agreed with defendants' argument that these "certain, future" acts or events included Laymac's payment of $1,000 and LSI's issuance of common stock and that Laymac's failure to perform constituted a material breach of the Letter Agreement, thus preventing performance of LSI's duties from becoming due.

We disagree with the trial court's construction of the Letter Agreement. As Laymac correctly points out, the words "upon the occurrence of certain events," which occur in the first sentence of the Letter Agreement, merely summarize a more specific paragraph on the second page of the Letter Agreement, concerning the issuance of *additional* shares of stock and the shareholders' rights to acquire a number or portion of those *additional* shares. Moreover, nowhere in the agreement is the right to become a shareholder made contingent "upon the occurrence of certain events."

15

We also find no merit in the trial court's conclusion that Laymac's execution of the Share Subscription Agreement was insufficient to establish him as a shareholder of LSI because he never paid the purchase price for the stock. Laymac contends that under Georgia law, one may have an ownership interest in a corporation without having received stock certificates, and that even if he is not already a shareholder, he has contract rights to become one. Defendants do not dispute this argument or the authorities upon which Laymac relies, except to argue that Laymac breached the Letter Agreement by failing to tender payment for the shares.

In *Kueffer Crane*, supra, this Court recognized that "one may have an ownership interest in a corporation without having received stock certificates" and concluded that failure to issue stock certificates to the plaintiff/former employee asserting an ownership in the defendant company "was not necessarily a breach of the agreement to make [plaintiff] a part owner." 247 Ga. App. at 329 (2).[5] In *Haas v. Koskey*, 138 Ga. App. 448 (226 SE2d 279) (1976), this Court held that "[o]ne who

[5] Defendants' contention that the trial court's ruling should be upheld on the alternative ground of impossibility is unavailing. There is no evidence that Laymac's background and past actions would have prevented him from being a shareholder. At most, LSI's attorney's affidavit established that licensing of mortgage lenders is highly regulated and that Laymac's background information would have had an "adverse impact on [his] approval. . . ."

16

has subscribed and paid for corporate stock is entitled to all the rights and responsibilities of ownership, whether the stock certificates have been issued to him or not." Id. at 453 (2). At issue in *Haas* was a contract for the sale of one-third of a corporation's capital stock. The buyer agreed to pay $8,000 in return for the seller assigning all of her interest in the stock to him and the corporation agreeing to issue to the buyer the stock certificates. When the corporation became defunct and no stock was issued, the seller sued the buyer for the purchase price. We concluded that the corporation breached the agreement by failing to issue the stock certificates, "but it was not such a breach as affected [the buyer's] proprietary rights or interest in the corporation. The defense of failure of consideration is not available to [the buyer] as against [the seller]." Id. See also *First Jewelers v. Rosen*, 119 Ga. App. 355, 356 (166 SE2d 919) (1969) ("mere fact that no stock had formally issued to plaintiff did not preclude a property interest"). While this case involves the converse situation, i.e., the subscriber's failure to pay for shares as agreed upon in the subscription agreement, there is no evidence that LSI ever issued the stock certificates. Under the Share Subscription Agreement, Laymac was required to pay "upon issue of the common

17

stock."[6] Because an issue of fact remains as to whether or not timely performance of the agreement was waived,[7] the trial court erred in ruling that Laymac's execution of the Share Subscription Agreement was insufficient to establish him as a shareholder of LSI because he never paid the purchase price for the stock. Accordingly, we reverse the grant of summary judgment to defendants on Laymac's claim for breach of contract.

3. Laymac next contends that the trial court erred in granting summary judgment to defendants on his claim for breach of fiduciary duties in a partnership venture. Defendants contend that the trial court correctly ruled that res judicata bars Laymac's claim. They maintain that Laymac was precluded from amending his claim for breach of fiduciary duty as an owner/shareholder in LSI (Count II of the first amended complaint) to a claim for breach of fiduciary duty in a partnership venture (Count V of the second amended complaint) because the trial court entered final

---

[6] We also note that Kushner's letter to Laymac in August 2013, cancelling the subscription agreement, supports the inference that the agreement was still in effect at that time.

[7] See, e.g., *Barkley-Cupit Enterprises v. Equitable Life Assur. &c.*, 157 Ga. App. 138, 142 (2) (276 SE2d 650) (1981).

18

judgment on that claim in its June 10, 2016 order, and Laymac did not appeal that ruling within thirty days.

As detailed above, the trial court granted summary judgment in favor of defendants on Laymac's claims for tortious deprivation of an interest in a corporation and breach of fiduciary duty, as alleged in the first amended complaint, ruling that Laymac "has not produced evidence he has an ownership interest in [LSI] to support [these claims]. Plaintiff's admission that he does not know whether he paid for his alleged stock does not create an issue of material fact." In this same order, the trial court granted summary judgment to Laymac on *defendants' counterclaim* for breach of fiduciary duty, ruling that Laymac's "deposition testimony and Defendant LSI's responses to interrogatories do not raise a factual issue with regard to the existence of a special principal-agent or other confidential relationship between [Laymac] and any of the Defendants." Five days later, Laymac filed a second amended complaint alleging breach of fiduciary duties in partnership venture. In its May 25, 2017 order, the trial court granted summary judgment on this claim, ruling that it was barred by res judicata:

> The assertion of this new claim expressly contradicts this Court's ruling
> on Count II of Plaintiff's First Amended Complaint [and] its finding that

19

'Plaintiff's deposition testimony and Defendant LSI's responses to interrogatories do not raise a factual issue with regard to the existence of a special principal-agent or other confidential relationship between Plaintiff and any of the Defendants.' The Court finds [that] Plaintiff's second Amended Complaint, filed on June 15, 2016[,] attempts to reassert and recast claims and issues that were ruled upon in its Order entered June 10, 2016.

We agree.

OCGA § 9-12-40 provides:

A judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered until the judgment is reversed or set aside.

Res judicata prevents the re-litigation of claims

which have already been adjudicated, or which could have been adjudicated, between identical parties or their privies in identical causes of action. Res judicata prevents a plaintiff from instituting a second complaint against a defendant on a claim that has already been brought, after having previously been adjudged not to be entitled to the recovery sought on that claim. Three prerequisites must be satisfied before res judicata applies – (1) identity of the cause of action, (2) identity of the

20

parties or their privies, and (3) previous adjudication on the merits by a court of competent jurisdiction.

(Citation and punctuation omitted; emphasis omitted.) *Kennedy Dev. Co. v. Newton's Crest Homeowners Assn.*, 322 Ga. App. 39, 41-42 (743 SE2d 600) (2013). The principle of res judicata "applies to attempts by amended complaint to relitigate matters that were or could have been litigated in the same action." *Benedict v. Snead*, 253 Ga. App. 749, 750 (560 SE2d 278) (2002) (physical precedent only). Moreover,

[e]ntry of a judgment as to one or more but fewer than all of the claims or parties is not a final judgment under OCGA § 5-6-34 (a) (1) and lacks res judicata effect *unless* the trial court makes an express direction for the entry of the final judgment and a determination pursuant to OCGA § 9-11-54 (b) that no just reason for delaying the finality of the judgment exists.

(Punctuation omitted; emphasis supplied.) Id. at 751, citing *Culwell v. Lomas & Nettleton Co.*, 242 Ga. 242, 243 (248 SE2d 641) (1978). See also *Cryomedics, Inc. v. Smith*, 180 Ga. App. 336, 338 (349 SE2d 223) (1986) ("[a]n order so certified is res judicata"). "If the trial court does certify that the judgment is final and ripe for review under OCGA § 9-11-54 (b), the jurisdictional thirty-day period for filing an appeal begins to run from the date of certification." (Citation and punctuation omitted.)

21

*Cherry v. Hersch*, 193 Ga. App. 471, 472 (1) (388 SE2d 64) (1989). See also *Bienert v. Dickerson*, 276 Ga. App. 621, 622 (1) (624 SE2d 245) (2005) ("[i]f an appellant fails to file a notice of appeal within 30 days of such an order, the right to review the order is lost") (citation and punctuation omitted). When Laymac failed to appeal the June 10, 2016 order, any issue ruled upon in that order has res judicata effect. See *Merchant v. Mitchell*, 241 Ga. App. 173, 174 (4) (525 SE2d 710) (1999). Thus, Laymac was precluded from amending his complaint to assert a claim for breach of fiduciary duties based upon a partnership relationship between the parties. *Benedict*, 253 Ga. App. at 750.

Nonetheless, Laymac contends that he was entitled to amend his complaint at any time before the entry of a pre-trial order. This argument ignores the res judicata effect of the June 10, 2016 order, and also brushes off the purpose of summary judgment. As this Court has explained,

> [s]ummary judgment is an abbreviated trial, but of no less importance than any other trial on the merits of the case. Once the issues are narrowed for trial, the complaint stands only upon those facts adduced at trial by the plaintiff, and once a verdict is returned or a motion for directed verdict is sustained, it is too late to amend even pending remittitur.

(Citation, punctuation and footnotes omitted.) *McDaniel v. City of Griffin*, 281 Ga. App. 350, 352 (1) (636 SE2d 62) (2006). On a motion for summary judgment, "[e]ach party has a duty to present his best case[.]" *Pfeiffer v. Georgia Dept. of Transp.*, 275 Ga. 827, 828 (2) (573 SE2d 389) (2002), citing *Summer-Minter & Assocs. v. Giordano*, 231 Ga. 601, 604 (203 SE2d 173) (1974). Moreover, "in responding to a motion for summary judgment, plaintiffs have a statutory duty to produce whatever viable theory of recovery they might have or run the risk of an adjudication on the merits of their case." (Punctuation and footnote omitted.) *Pfeiffer*, 275 Ga. at 828 (2), citing *Summer-Minter*, 231 Ga. at 606 ("statutory burden which rested upon plaintiff, in resisting defendants' motion for summary judgment, is to produce whatever viable theory of recovery they might have or run the risk of an adjudication on the merits of their case"). "Therefore, we cannot authorize a plaintiff to launch a new lawsuit through amendment after a final decision on summary judgment nor can we permit a defendant to utilize a new defense following a ruling on summary judgment in plaintiff's favor as to liability." *McDaniel*, 281 Ga. App. at 352 (1). See also *Lafontaine v. Alexander*, 343 Ga. App. 672, 676 (1) (808 SE2d 50) (2017); *Richards v. Wells Fargo Bank*, 325 Ga. App. 722, 726 (5) (b) (754 SE2d 770) (2014).

Pretermitting the res judicata effect of the June 10, 2016 order, Laymac never argued during the summary judgment phase that a confidential relationship existed between the parties as *partners*. The trial court granted summary judgment to Laymac on defendants' counterclaim for breach of fiduciary duty, concluding that the evidence did not establish a confidential relationship between the parties. OCGA § 23-2-58 specifically defines a confidential relationship to include one "between *partners*, principal and agent, etc." (Emphasis supplied.) Even though the trial court did not invoke this reasoning when it granted summary judgment to defendants on Laymac's claim for breach of fiduciary duty, it is equally applicable; either a confidential relationship exists or it does not. "No party, plaintiff or defendant, is permitted to stand his case before the court on some of its legs, and if it falls, set it up again on the rest in a subsequent proceeding, and thus evade the bar of the former judgment." (Citation and punctuation omitted.) *Smith v. Lockridge*, 288 Ga. 180, 186 (702 SE2d 858) (2010). For these reasons, the trial court did not err in granting summary judgment to defendants on Laymac's claim for breach of fiduciary duties in partnership venture, and we affirm that ruling.[8]

---

[8] Because the trial court explicitly ruled on the breach of fiduciary duty claims and clearly explained its reasoning, this ruling does not conflict with our ruling in Division 1.

4. Lastly, Laymac contends that the trial court erred by denying summary judgment on defendants' claim that Laymac breached his employment contract. In its order, the trial court noted that "[d]efendants' counterclaim for breach of contract asserts that Plaintiff breached the terms of his employment agreement when he solicited Defendant LSI's employees after his termination." Without further explanation, the trial court ruled that an issue of fact remains as to this claim. Defendants' breach of contract claim asserts that "Laymac failed to promote the interests of LSI by promoting his own interests and not fulfilling the duties assigned to him by LSI." In their appellate brief, Kushner and LSI explain that their breach of contract claim is premised on Laymac's wilful violation of LSI's IRRP; Laymac disregarded the policy and then concealed that breach, resulting in significant monetary losses to LSI.

Laymac asserts that defendants' breach of contract claim is for damages arising out of the performance of his job duties, and contends that the trial court erred in denying summary judgment on the claim as alleged because "a tort claim under a contract . . . can not be sustained." Laymac made this same argument below in his motion for partial summary judgment. The trial court appears to have misread defendants' breach of contract claim, noting in its order that the claim "asserts that

25

Plaintiff breached the terms of his employment agreement when he solicited Defendant LSI's employees after his termination,"[9] and did not reach the ground asserted by Laymac, denying his motion because an issue of genuine fact remains. Given that the trial court failed to consider Laymac's argument in relation to the proper claim, we vacate the denial of Layman's motion for summary judgment on defendants' breach of contract claim and remand the case so that the trial court can consider Laymac's argument in relation to defendants' breach of contract claim as alleged. See *City Of Gainesville v. Dodd*, 275 Ga. 834, 838-839 (573 SE2d 369) (2002) (appellate courts retain discretion in determining whether to apply the right-for-any-reason rule and consider alternative legal theories not addressed by the trial court in its order granting summary judgment, or to vacate order and remand for the trial court to consider alternative legal theories in the first instance); *Meredith v. Thompson*, 312 Ga. App. 697, 702 (719 SE2d 592) (2011) (denial of summary judgment vacated because trial court's order was based solely on defendants' failure to negate alleged facts and failed to consider other grounds asserted by defendants).

---

[9] As noted previously, however, defendants concede that their breach of contract claim is premised on Laymac's violation of LSI's IRRP, not on any solicitation of LSI employees after his termination.

See also *Med. Center of Central Ga. v. City of Macon*, 326 Ga. App. 603, 607 (757 SE2d 207) (2014).

*Judgment affirmed in part, reversed in part, and vacated in part, and case remanded with direction. Miller, P. J., and Goss, J., concur.*